

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-08-008-CR

JANET KAY AHMAD                                                            APPELLANT

V.

THE STATE OF TEXAS                                                            STATE

------------

FROM COUNTY CRIMINAL COURT NO. 10 OF TARRANT COUNTY

------------

## OPINION ON REHEARING

------------

After reviewing Appellant Janet Kay Ahmad's motion for rehearing, we deny the motion. We withdraw our May 28, 2009 opinion and judgment and substitute the following. Our ultimate disposition is unchanged.

### Introduction

Appellant appeals from her conviction for possession of a hoax bomb. In seven points, she argues that limitations barred prosecution because the first of two indictments failed to toll limitations; that the evidence is legally and

factually insufficient to prove that the bomb—a World War II practice bomb—was a "hoax" bomb; that the trial court erred by reopening the evidence to allow the State to prove its venue allegations; and that the indictment failed to sufficiently notify her of the charges against her.  We affirm.

**Factual Background**

Southridge Hills is a residential subdivision of Arlington, Texas.  During World War II, military aviators used the then-undeveloped Southridge Hills area as a practice bombing range, dropping small, cast iron "practice bombs."  The practice bombs each contained a "spotting charge" consisting of a 10-gauge shotgun blank and chemicals designed to fire on impact and expel a puff of smoke so that an observer could see where the bomb landed.  The practice bombs were not designed to explode.

After the Southridge Hills subdivision was developed in the late 1990s, homeowners began to discover the practice bombs on their property.  The Army Corps of Engineers circulated fliers warning residents about the practice bombs, and the subdivision's developer instructed homeowners to call 9-1-1 if they found a bomb.  Between 2004 and 2005, the Corps discovered and removed 241 practice bombs in Southridge Hills.

Appellant, a San Antonio resident, is the president of Homeowners for Better Builders ("HOBB"), the mission statement of which is "[t]o support a

2

meaningful, long[-]term solution to the problem of the unregulated home building industry." On January 26, 2002, Appellant, Crystal McCartney—a real estate agent—and Thea Lewis—a Southridge Hills resident—went to Southridge Hills to distribute fliers promoting an upcoming meeting to be hosted by Appellant concerning the practice bombs.

McCartney testified that after the women drove around the neighborhood looking at houses under construction, Appellant said that "she wanted to look for a bomb, to see if she could find one of the bombs." Appellant and McCartney drove to an empty lot. Five to ten minutes later, Appellant said she had found a bomb.

At Appellant's request, McCartney called 9-1-1 and told the dispatcher that they had found a bomb. McCartney testified that she believed she was dealing with an emergency. Later, said McCartney, Appellant told her that the bomb was one she had found at an earlier date, and McCartney believed that Appellant placed the bomb where she claimed to have found it on January 26 for the sake of publicity. Appellant concedes that she did not, in fact, find the practice bomb at that location but "planted" it there herself.

Andrew Leonard, who lived in a house adjacent to the lot where Appellant found the bomb, testified that he saw Appellant, McCartney, and Lewis looking around on the vacant lot. Leonard became suspicious of the women's intent

3

when he saw Lewis, whom he knew to be involved in litigation with the developer over the practice bombs, so he continued to watch them. He saw Appellant retrieve a shovel and another object from her vehicle, put the object in her pocket, and return to the lot. He said Appellant then moved some dirt with the shovel, reached into her pocket, and placed something on the ground. Suspecting that something was amiss, Leonard called to his wife to see what was happening, and she began to videotape the women. Leonard testified that Appellant did not appear scared as though she had been dealing with a dangerous bomb. Leonard himself considered the practice bombs not dangerous because he had attended several Corps of Engineers meetings and had conducted "extensive research" on such devices.

Arlington Police Officer Jessie Minton was dispatched to the scene of the incident. Officer Minton stated that he discovered a practice bomb protruding from the soil. He testified that although the soil in the lot was sticky, black mud, the practice bomb was dry and rusty, and the soil on it did not match the mud in the lot. He suspected that the bomb had been deliberately planted within a few minutes of his arrival at the scene. He did not consider the bomb dangerous. He testified that the device was "not explosive" but "look[ed] like a bomb."

4

Officer Jack Gariota testified that he assisted Officer Minton and discovered the bomb's tail fin protruding from the ground. Officer Gariota stated that he had conducted online research concerning practice bombs. He testified that he believed the bomb had deteriorated after decades of exposure to moisture and opined that it was inert and was not a threat, and he was not afraid to hold it. He also believed that the device had been moved from its original place of discovery to the vacant lot. He recalled that home owners who had found similar devices had been "pretty concerned" and avoided them as much as possible.

Teresa Solano, a homeowner in the Southridge Hills subdivision, testified that notices she received from the Army Corps of Engineers and the subdivision developer described the bombs as "practice bombs," not "hoax bombs." She stated that these notices advised residents to immediately contact the fire department or police department upon discovery of a practice bomb.

Carl Ford, a supervisor in the Army Corps of Engineers' hazardous waste and military munitions group, testified that the device Appellant found was a MK-23 practice bomb. Ford considers practice bombs dangerous because "[t]hey can very easily hurt or injure somebody if . . . mishandled." Ford stated that the Corps excavated 241 practice bombs from the subdivision "[t]o protect the public" from "explosive hazards."

5

**Procedural Background**

On August 12, 2003, a grand jury returned a two-count indictment charging Appellant with tampering with and fabricating evidence. Appellant moved to quash the indictment, and the State moved to dismiss it for failure to state an offense. The indictment was dismissed on May 26, 2004. On July 8, 2004, a grand jury returned a second indictment, this time alleging one count of making a false report and one count of possessing a hoax bomb. The indictment contained a tolling paragraph asserting that the conduct charged in the second indictment was the same conduct that had been charged in the first indictment.

On January 8, 2008, a jury acquitted Appellant of the false-report count but convicted her for the hoax-bomb count. The trial court assessed punishment of a $4,000 fine and 180 days in jail but suspended imposition of the sentence and placed Appellant on community supervision for twelve months. Appellant filed a combined motion for new trial and for arrest of judgment, which were overruled by operation of law. Appellant then filed this appeal.

This is Appellant's third trip to this court. *See Ahmad v. State*, 158 S.W.3d 525 (Tex. App.—Fort Worth 2004, pet. ref'd) (*Ahmad I*); *Ex parte Ahmad*, No. 02-05-00338-CR, 2007 WL 80013 (Tex. App.—Fort Worth

6

January 11, 2007, pet. ref'd) (not designated for publication) (*Ahmad II*). In *Ahmad I*, Appellant attempted to appeal the trial court's denial of her motion to dismiss the second indictment as barred by limitations. 158 S.W.3d at 526. We dismissed the appeal for want of jurisdiction. *Id*. at 527. In *Ahmad II*, Appellant appealed the trial court's denial of her petition for writ of habeas corpus — again related to Appellant's limitations and tolling arguments — and we affirmed the denial. 2007 WL 80013, at * 1, 4.

**Discussion**

**I.     Limitations and Tolling**

In her first two issues, Appellant argues that the trial court erred by denying her motion to quash the indictment and her combined motion in arrest of judgment and for new trial because the State filed its second indictment after the two-year statute of limitations expired. Appellant's argument has three components. First, she argues that the first indictment did not toll limitations with regard to the second indictment because the first indictment failed to allege an offense. Second, she argues that the first indictment did not toll limitations with regard to the second indictment because the two indictments alleged different conduct. Third, she argues that the second indictment's tolling paragraph was insufficiently specific to relate back to the first indictment.

7

**A.    Preservation of limitations issues**

Before turning to the merits of Appellant's limitations arguments, we must address the State's argument that Appellant waived her issues by failing to request a jury instruction on limitations.  The State relies on *Tita v. State*, 267 S.W.3d 33 (Tex. Crim. App. 2008), but *Tita* does not support the State's argument.  In that case, different grand juries returned five indictments against Tita.  *Id.* at 34–35.  Tita moved to dismiss the last indictment as barred by limitations, the trial court denied the motion, and the State brought Tita to trial on the last indictment.  *Id.* at 35.  When the State rested on its case in chief and again at the close of all evidence, Tita moved for a directed verdict based on limitations; the trial court denied both motions.  *Id.* at 35–36.  On appeal, Tita argued that the trial court erred by failing to dismiss the indictment and that the evidence presented at trial was legally insufficient to support his conviction because the State failed to prove that the offense occurred within the applicable limitations period.  *Id.* at 36.

With regard to Tita's sufficiency argument, the court of criminal appeals held that Tita failed to preserve the issue for review by failing to request a jury instruction on limitations, *id*. at 38, and the State relies on this holding to support its waiver argument in this case.  Specifically, the court stated as follows:

The record reflects that, at the guilt stage of trial, appellant moved twice for an instructed verdict of acquittal, but he never requested a jury instruction on the statute of limitations defense. Under those circumstances, the State was not obligated to prove that its prosecution was not limitations-barred.

*Id.* at 39. Unlike Tita, Appellant does not argue that the evidence was insufficient to prove that the offense occurred within the limitations period. Thus, the State's reliance on this part of *Tita* is misplaced. Further, the court of criminal appeals considered on the merits Tita's other issue, that is, whether the trial court erred by failing to dismiss the indictment as barred by limitations—the same issue Appellant raises in this case—despite Tita's failure to request a jury instruction on limitations. *Id.* at 37–38. We therefore reject the State's argument that Appellant waived her limitations issues by failing to request a jury instruction on limitations.

**B.    Standard of review**

We review a trial court's denial of a motion to quash an indictment de novo because the sufficiency of an indictment is a question of law. *Lawrence v. State*, 240 S.W.3d 912, 915 (Tex. Crim. App. 2007), *cert. denied*, 128 S. Ct. 2056 (2008); *State v. Moff*, 154 S.W.3d 599, 601 (Tex. Crim. App. 2004). De novo review is appropriate because this question of law does not turn on the credibility and demeanor of a witness, and thus, the trial court was in no better

9

position to deny the motion. *See Moff*, 154 S.W.3d at 601; *Mungin v. State*, 192 S.W.3d 793, 794 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

Conversely, we review a trial court's denial of motions in arrest of judgment and motions for new trial for an abuse of discretion. *Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004); *Hawkins v. State*, 910 S.W.2d 176, 178 (Tex. App.—Fort Worth 1995, no pet.). A trial court abuses its discretion when no reasonable view of the record could support the trial court's ruling. *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007); *Charles*, 146 S.W.3d at 208. We view the evidence in the light most favorable to the trial court's ruling and substitute our judgment only if the decision was arbitrary or unreasonable. *Webb*, 232 S.W.3d at 112.

We therefore review the trial court's rulings on Appellant's motion to quash and motion in arrest of judgment/motion for new trial under both the de novo and abuse of discretion standards.

**C.    The indictments**

The first indictment, returned on August 12, 2003, alleged as follows:

> On or about the 26th day of January, 2002, [Appellant] did intentionally or knowingly, make, present, or use, a thing, to-wit: a training bomb, which she buried that day . . . with knowledge of

10

its falsity . . . [and] knowing that an official proceeding was pending or in progress . . . .[1]

Appellant moved to quash the first indictment for failing to state an offense. The State conceded the issue and filed its own motion to dismiss the indictment, which the trial court granted on May 26, 2004.

The grand jury returned a second indictment on July 8, 2004, alleging as follows:

[O]n or about the 26th day of January 2002, [Appellant] did . . . intentionally or knowingly, initiate, communicate, circulate, or broadcast, a report of a present, past or future other emergency, to-wit: that a bomb was located in a residential development . . . .

Count two: And it is further presented . . . that [Appellant] . . . did then and there knowingly possess a hoax bomb with the intent to use the hoax bomb to make another believe that the hoax bomb was an explosive or incendiary device, or with intent to cause alarm or reaction of any type by an official of a public safety agency or volunteer agency organized to deal with emergencies.

Tolling paragraph: And I do further present in and to said court that heretofore, on the 6th day of August, 2003, a complaint was duly filed in the 213th Criminal District Court of Tarrant County, Texas, charging said defendant with an offense arising out of the same conduct.

---

[1] The "official proceeding" alleged by the indictment was a lawsuit between Southridge Hills homeowners and the developer. The second count of the first indictment alleged the identical conduct, but for the "official proceeding," it alleged the police investigation into the bomb's discovery.

11

**D.    Tolling effect of defective first indictment**

Appellant argues that the first indictment—which the State moved to dismiss because it failed to state an offense—was defective and did not toll limitations with regard to the second indictment—which the grand jury returned more than two years after the incident in question.  Possession of a hoax bomb is a Class A misdemeanor subject to the two-year statute of limitations.  *See* Tex. Penal Code Ann. § 46.08(b) (Vernon 2003); Tex. Code Crim. Proc. Ann. art. 12.02 (Vernon 2005).

A limitations period is suspended or tolled during the pendency of a charging instrument, and the time between filing and dismissal of a charging instrument that is rendered invalid "for any reason" is not computed in the limitations period.  Tex. Code Crim. Proc. Ann. art. 12.05(b)-(c) (Vernon 2005).  The legislature enacted article 12.05 to overcome the traditional rule that invalid indictments will not toll the limitations period in the absence of a statute so holding.  *Vasquez v. State*, 557 S.W.2d 779, 784 (Tex. Crim. App. 1977), *overruled on other grounds*, *Proctor v. State*, 967 S.W.2d 840 (Tex. Crim. App. 1998).  For tolling purposes, "[i]t makes no difference whether the initial indictment is faulty or valid."  *State v. Hall*, 794 S.W.2d 916, 919 (Tex. App.—Houston [1st Dist.] 1990), *aff'd*, 829 S.W.2d 184 (Tex. Crim. App. 1992) (en banc).  Consequently, a defective charging instrument will toll

12

limitations under article 12.05(b) for a subsequent indictment when both indictments allege the same conduct, act, or transaction. *Hernandez v. State*, 127 S.W.3d 768, 774 (Tex. Crim. App. 2004).

Appellant further argues that the first indictment is not merely defective; she argues that it is no indictment at all, and therefore did not toll limitations, because it failed to allege an offense. The Texas constitution requires that an indictment allege that (1) a person (2) committed an offense; without both of those elements, the charging instrument is not an indictment. *Teal v. State*, 230 S.W.3d 172, 179 (Tex. Crim. App. 2007).[2] The proper test to determine if a charging instrument alleges "an offense" is whether the allegations in it are clear enough that one can identify the alleged offense. *Id.* at 180. Stated another way: Can the trial court (and appellate courts who give deference to the trial court's assessment) and the defendant identify what penal code provision is alleged? *Id.*

Appellant contends that the first count of the first indictment alleged tampering with evidence in a civil lawsuit, which Appellant claims is not an offense. We agree that the first count alleged tampering with evidence in a civil

---

[2] In her motion for rehearing, Appellant contends that "[b]oth Appellant and the State agreed that *Teal* . . . is controlling" and faulted this court for not addressing "this dispositive point." But Appellant did not cite *Teal* in any of her briefs in this court, and the State cited *Teal* twice in passing.

lawsuit, but we disagree with Appellant's claim that such tampering is not an offense. Penal code section 37.09 prohibits tampering with evidence if the person knows that "an investigation or official proceeding is pending or in progress." Tex. Penal Code Ann. § 37.09 (Vernon Supp. 2008). An official proceeding is "any type of administrative, executive, legislative, or judicial proceeding that may be conducted before a public servant." *Id*. § 1.07(a)(33) (Vernon Supp. 2008). The definition of "official proceeding" does not limit the term to criminal proceedings. *See id.* "Public servant" includes a "person who is authorized by law . . . to hear or determine a cause or controversy"—in other words, a civil judge. *Id.* § 1.07(a)(41)(C); *see Lebleu v. State*, 192 S.W.3d 205, 213 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) (holding evidence sufficient to sustain conviction for retaliation against public servant when public servant in question was civil district judge presiding over a civil dispute between defendant and defendant's ex-wife). While criminal prosecutions for tampering with evidence in civil lawsuits are rare, they are not unheard of. *See*, *e.g.*, *LeJune v. State*, No. 09-98-037-CR, 1999 WL 160674, at *1 (Tex. App.—Beaumont March 24, 1999, no pet.) (per curiam) (not designated for publication) (affirming conviction for tampering with evidence in a child custody case).

14

Appellant also argues—for the first time in her reply brief—that the State is judicially estopped from arguing on appeal that the first indictment alleged an offense because in the trial court, the State moved to dismiss the first indictment for failing to state an offense. Judicial estoppel precludes a party who successfully maintains a position in one proceeding from afterwards adopting a clearly inconsistent position in another proceeding to obtain an unfair advantage. *Ferguson v. Bldg. Materials Corp.*, No. 08-0589, 2009 WL 1901639, at *1 (Tex. Jul. 3, 2009) (per curiam); *see Schmidt v. State*, 278 S.W.3d 353, 358 (Tex. Crim. App. 2009) ("[The] equitable rule of judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.") (citing *New Hampshire v. Maine*, 532 U.S. 742, 749–51, 121 S. Ct. 1808, 1814 (2001)). Accordingly, a party cannot be judicially estopped if it did not "prevail" in the prior action. *Ferguson*, 2009 WL 1901639 at *1. The doctrine is not intended to punish inadvertent omissions or inconsistencies but rather to prevent parties from playing fast and loose with the judicial system for their own benefit. *Id.*

In this case, the Appellant moved to quash the first indictment, arguing that it failed to allege an offense. The State agreed and filed its own motion to dismiss because "[t]he conduct alleged in the indictment does not constitute an

15

offense." Under the circumstances, we cannot say that the State "prevailed" on its motion to dismiss, which simply agreed with Appellant's motion to dismiss; if anyone prevailed, it was Appellant, who succeeded in having the indictment dismissed. Because the State did not "prevail in the prior action," it cannot be judicially estopped. *See id.* We therefore reject Appellant's judicial estoppel argument.

Because even a defective first indictment may toll limitations, we overrule Appellant's argument that limitations was not tolled by the allegedly defective first indictment.

### E.    Same conduct, act, or transaction

Next, Appellant argues that the first indictment did not toll limitations with regard to the second because the two indictments do not allege the same conduct, act, or transaction.[3]

If the prior and subsequent indictments charge different offenses but the offenses arise from the same conduct, the prior indictment tolls the statute of limitations. *Id*. Two indictments arise from the same conduct if they arise from

---

[3] Appellant made the same argument in *Ahmad II*, but we did not reach the argument; instead, we held that the second indictment's tolling paragraph sufficed to show that the charged offense was not, at least on its face, barred by limitations and that Appellant could not challenge the sufficiency of the tolling paragraph by pretrial writ of habeas corpus. 2007 WL 80013, at *4.

16

the same underlying event or incident. For example, in *Hernandez*, the court of criminal appeals held that a prior indictment alleging possession of amphetamine arose from the same conduct as a subsequent indictment alleging possession of methamphetamine when both indictments referred to a controlled substance found on the defendant's person on a particular date. *Id*. Likewise, the Fourteenth Court of Appeals held that in a case where the defendant induced a minor to masturbate him, a prior indictment alleging indecent exposure arose from the same conduct as a subsequent indictment alleging sexual performance of a child. *Green v. State*, No. 14-08-00075-CR, 2009 WL 136917, at *1 (Tex. App.—Houston [14th Dist.] Jan. 20, 2009, no pet.) (mem. op., not designated for publication). Similarly, in a case where the evidence at trial showed that the defendant assaulted and killed a single victim in a single incident, the Tyler Court of Appeals held that a prior indictment alleging murder arose from the same incident as a subsequent indictment alleging assault. *Loredo v. State*, No. 12-06-00287-CR, 2007 WL 2380346, at *2 (Tex. App.—Tyler Aug. 22, 2007, no pet.) (mem. op., not designated for publication). On the other hand, the Beaumont Court of Appeals held that two indictments "obviously" did not arise from the same conduct when the prior indictment alleged a robbery committed in September 1998 and the subsequent indictment

17

alleged bail jumping committed in May 2001. *Ex parte Martin*, 159 S.W.3d 262, 265 (Tex. App.—Beaumont 2005, pet. ref'd).

In this case, the first indictment alleged that Appellant buried a training bomb on January 26, 2002. The second indictment alleged that Appellant made a false report about a bomb and possessed a hoax bomb on January 26, 2002. Although the indictments alleged different offenses, the offenses all arose from the same conduct: Appellant's possession of and report about some kind of bomb—hoax, training, or unspecified—on January 26, 2002. In this regard, this case is much more like *Hernandez*, *Green*, and *Loredo* than it is like *Martin*. We therefore hold that the two indictments arose from the same conduct, and we overrule this part of Appellant's argument.

**F.    Sufficiency of tolling paragraph**

Finally, Appellant argues that the second indictment's tolling paragraph is not sufficiently specific to relate back to the first indictment because it failed to indicate that the case was previously filed under a particular district court case number or allege that the indictment was for the same offense as the second indictment. In *Ex parte Smith*, the court of criminal appeals held that the deficiency of a tolling allegation "could be raised only in a pretrial motion to dismiss or quash" the charging instrument. 178 S.W.3d 797, 805 (Tex.

18

Crim. App. 2005).[4] Because "defects . . . [in a] tolling paragraph . . . do not destroy a trial court's power or jurisdiction to proceed, . . . they may not be raised by means of a pretrial writ of habeas corpus. Instead, they may and must be raised in a motion to quash or motion to dismiss the pleading." *Id.* at 803 (citations omitted). "[A]ny purported defects of form and substance in . . . the tolling paragraph relate to notice and must be brought to the trial court's attention before trial or they are waived." *Id.*

Although Appellant referred to the second indictment's tolling paragraph in her motion to dismiss the indictment, she did not allege that the tolling paragraph was insufficiently specific, and the tolling paragraph played no role in her argument. Appellant also filed a pretrial petition for writ of habeas corpus, which stated that it "raised the identical issue presented" by her prior motion to dismiss and made the same argument as the motion to dismiss.[5] Appellant did not raise her complaint about the tolling paragraph's specificity

---

[4] We note in passing that Appellant relies on this court's opinion in the same case to support the merits of her argument. But the court of criminal appeals reversed our judgment, and on September 26, 2008, the records of the case were expunged—including our previously published opinion.

[5] Because Appellant's petition for writ of habeas corpus did not assert her complaint about the alleged tolling paragraph defects, we need not decide whether a pretrial habeas petition—even though such defects may not be raised by means of a pretrial writ—is sufficient to bring the complaint to the trial court's attention and thus preserve error for appeal—a possibility not resolved by *Ex parte Smith*. *See id.*

19

until after trial in her combined motion for arrest of judgment and for new trial. By failing to raise her complaint about the tolling paragraph before trial, she waived it. *See id.*

### G.    Conclusion

Because (1) even a defective indictment will toll limitations, (2) the first and second indictments arose from the same conduct, and (3) Appellant waived her complaint about the tolling paragraph's sufficiency, we hold that the trial court did not err by denying Appellant's motion to dismiss the second indictment and did not abuse its discretion by denying her combined motion to arrest the judgment and for new trial. We overrule Appellant's first two issues.

## II.    Legal and Factual Sufficiency

In her third and fourth issues, Appellant argues the evidence was legally and factually insufficient to support her conviction for possessing a hoax bomb. The gist of Appellant's argument is that the evidence showed that the device she possessed was a "real" practice bomb, not a "hoax" bomb; she states that "[t]he sole fact at issue is whether the practice bomb was a real bomb or a hoax bomb." The State contends that the hoax bomb statute unambiguously prohibits possession of the device in question, regardless of whether it was a real bomb, a simulated bomb, or a practice bomb.

## A.    The hoax bomb statute

Penal code section 46.08 defines the offense of possession of a hoax bomb as follows:

> A person commits an offense if the person knowingly manufactures, sells, purchases, transports, or possesses a hoax bomb with the intent to use the hoax bomb to:
>
> (1) make another believe that the hoax bomb is an explosive or incendiary device; or
>
> (2) to cause alarm or reaction of any type by an official of a public safety agency or volunteer agency organized to deal with emergencies.

Tex. Penal Code Ann. § 46.08(a) (Vernon 2003).  Section 46.01(13) defines "hoax bomb" as

> a device that (A) reasonably appears to be an explosive or incendiary device or (B) by its design causes alarm or reaction of any type by an official of a public safety agency or a volunteer agency organized to deal with emergencies.

*Id.* § 46.01(13) (Vernon Supp. 2008).  The code does not define "explosive or incendiary device," but it does define "explosive weapon" as

> any explosive or incendiary bomb, grenade, rocket, or mine, that is designed, made, or adapted for the purpose of inflicting serious bodily injury, death, or substantial property damage, or for the principal purpose of causing such a loud report as to cause undue public alarm or terror, and includes a device designed, made, or adapted for delivery or shooting an explosive weapon.

*Id.* § 46.01(2).

21

**B.    Can a "real" bomb be a "hoax" bomb?**

Appellant focuses on the colloquial meaning of "hoax" and argues that a real bomb cannot be a hoax bomb because "the core meaning of 'hoax' is . . . falsity." *See* Webster's Ninth New Collegiate Dictionary 574 (1987) (defining "hoax" as "an act intended to trick or dupe . . . something accepted or established by fraud or fabrication"). Appellant contends that because the practice bomb was a "real" bomb, it could not be a false or hoax bomb.

But the statutory definition of hoax bomb is not so constrained. Section 46.01(13) defines "hoax bomb" as a device that (A) reasonably appears to be an explosive or incendiary device or (B) by its design provokes a public safety reaction. Tex. Penal Code Ann. § 46.01(13). Both halves of the definition are broad enough to encompass "real" bombs; neither half is limited to "fake" bombs. Part (A) of the definition includes a device that reasonably appears to be an explosive device, regardless of whether it truly is an explosive device or turns out to be fake. Part (B) of the definition includes a device that by its design provokes a public safety reaction, regardless of whether the device is a real bomb or a fake bomb. Despite the legislature's use of the word "hoax" in sections 46.01(13) and 46.08, nothing in the penal code suggests that the

22

legislature intended those sections to apply only to fake bombs,[6] and its expansive definition of "hoax bomb" unambiguously rules out that possibility.[7]

Thus, in this case, it makes no difference whether the practice bomb was a real bomb or a fake bomb as long as the evidence supports the elements of section 46.01(13) and 46.08. With this in mind, we turn to Appellant's legal and factual sufficiency arguments.

---

[6] In this regard, the Texas hoax bomb law is unique. Four other states—Florida, Nevada, New Mexico, and West Virginia—prohibit possession of "hoax" bombs (other states prohibit the possession of devices that appear to be bombs, but their statutes do not use the word "hoax"). But the relevant Florida, New Mexico, and West Virginia statutes define "hoax bomb" as a device that appears to be an explosive device but is, in fact, "an inoperative [or inert] facsimile or imitation." Fla. Stat. Ann. § 790.165(1) (West 2008); N.M. Stat. Ann. § 30-7-20 (West 2008); W. Va. Code Ann. § 61-3E-1(c) (2008). The Nevada statute defines "hoax bomb" as "(a) An inoperative facsimile or imitation of an explosive or incendiary device; or (b) A device or object that appears to be or to contain an explosive or incendiary device." Nev. Rev. Stat. Ann. § 202.263(4)(a)-(b) (West 2008). Thus, only Texas law prohibits possession of a "hoax bomb" without any reference whatsoever to whether the device is "an inoperative facsimile or imitation" or a real bomb. We note that the second half of Nevada's "hoax bomb" definition appears—like both parts of Texas's definition—broad enough to include both real and fake bombs that appear to be real.

[7] Appellant urges us to consider the legislative history of the hoax bomb statute. But the court of criminal appeals has admonished Texas courts that "[i]f the plain language of a statute would lead to absurd results, or if the language is not plain but rather ambiguous, then *and only then*, out of absolute necessity, is it constitutionally permissible for a court to consider . . . legislative history." *Boykin v. State*, 818 S.W.2d 782, 785–86 (Tex. Crim. App. 1991). Because we hold the hoax bomb statute is unambiguous, we need not resort to its legislative history to guide our analysis.

23

**C.	Legal and factual sufficiency:  standards of review**

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. *Neal v. State*, 256 S.W.3d 264, 275 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 1037 (2009); *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006).  We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the factfinder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the factfinder's determination is manifestly unjust.  *Lancon v. State*, 253 S.W.3d 699, 704 (Tex. Crim. App. 2008); *Watson*, 204 S.W.3d at 414–15, 417.

**D.	The evidence is legally sufficient.**

Appellant concedes that she "planted" the practice bomb, which necessarily means that she also knowingly possessed it.  *See* Tex. Penal Code

24

Ann. § 46.08(a). The State offered into evidence a similar practice bomb (the State lost the one Appellant possessed) and photographs of other, similar bombs; they reasonably appear to be explosive devices. The evidence also shows that the device "caused a reaction of any type" by a public safety agency, namely, police were dispatched to the location where Appellant said she found the bomb. Thus, the evidence is legally sufficient to support the jury's implied finding that the device was a "hoax bomb" as defined by either half of section 46.01(13).

The evidence also shows that upon "finding" the bomb, Appellant attempted to call 9-1-1 and, when she could not do so on her own phone, asked McCartney to do so. This is some evidence that Appellant possessed the practice bomb with the intent to cause alarm or a reaction of any type by an official of a public safety agency organized to deal with emergencies, namely, the police. The fact that neither of the police officers who were dispatched to the scene was especially alarmed by the practice bomb is irrelevant; the question is what Appellant intended, and her 9-1-1 call shows that she intended to provoke a police reaction.

Considering the evidence in the light most favorable to the prosecution, we hold that a rational jury could have found beyond a reasonable doubt that (1) Appellant knowingly possessed a device (2) that reasonably appeared to be

25

an explosive device or by its design caused a reaction of any type by a public safety agency (3) with the intent to cause a reaction of any type by a public safety agency. *See id.* §§ 46.01(13), 46.08(a). Thus, the evidence is legally sufficient to support her conviction for possession of a hoax bomb, and we overrule her third issue. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778.

### E. The evidence is factually sufficient.

In addition to the foregoing evidence, the record shows that the Corps of Engineers and other agencies advised residents to call 9-1-1 if they found a practice bomb. If Appellant had simply found the bomb, then her calling 9-1-1 would not necessarily show that she intended to provoke a public safety reaction. But if Appellant had simply found the bomb, rather than possessing it, then her action would not fall within the conduct prohibited by section 46.08 at all. Thus, the testimony about instructions to call 9-1-1 upon discovery of a bomb does not militate against the jury's verdict.

Appellant argues that "[p]roof the bomb was harmless is extremely weak." But because the penal code does not distinguish between real and fake bombs in the definition of "hoax bomb," the State was not required to prove that the bomb was harmless. Testimony that neither the Corps of Engineers nor any other agency regarded the practice bombs to be "hoax bombs" in the

26

colloquial sense of "hoax" does not preclude them from being "hoax bombs" in the statutorily-defined sense. Likewise, evidence that government agencies warned residents that the practice bombs could be dangerous does not preclude them from falling within section 46.01(13)'s definition of "hoax bomb."

Considering all of the evidence in a neutral light, we hold that the evidence supporting Appellant's conviction is not so weak, nor the conflicting evidence so strong, that the jury's verdict was manifestly unjust. *See Lancon,* 253 S.W.3d at 704; *Watson*, 204 S.W.3d at 414–15, 417. Thus, the evidence is factually sufficient to support Appellant's conviction, and we overrule her fourth issue.

## III. Decision to Reopen Trial for Additional Testimony

In her fifth issue, Appellant argues that the trial court erred by granting the State's motion to reopen the evidence to establish venue.

The State argues that Appellant failed to preserve error by not specifically objecting at trial. We disagree. Appellant must show she timely presented her complaint and the grounds therefore to the trial court and obtained an adverse ruling. Tex. R. App. P. 33.1(a)(1). The objection need not be specific if the trial judge was aware of the substance of the objection when it was made. *Cooper v. State*, 961 S.W.2d 222, 228 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd); *Kelly v. State*, 903 S.W.2d 809, 811 (Tex. App.—Dallas 1995, pet.

27

ref'd).  Appellant's objection, although general, immediately followed a lengthy discussion of venue, in which she voiced her complaint that there was no evidence the events took place in Tarrant County.  The trial judge was clearly aware of the substance of the objection.  *See, e.g.*, *Shedden v. State*, 268 S.W.3d 717, 730 (Tex. App.—Corpus Christi 2008, pet. ref'd) (holding no waiver where, prior to "no objection" statement, the parties had held "a lengthy discussion about the suppression issues"); *see also Alcocer v. State*, 256 S.W.3d 398, 402 (Tex. App.—San Antonio 2008, no pet.) (concurring with judgment on grounds that courtroom discussion apprised trial judge of grounds of objection because "[p]ublic confidence in our criminal justice system is eroded when we fail to address the merits of a complaint because we too broadly construe the rules applicable to waiver.") (mem. op.) (Hilbig, J., concurring).  Thus, we will address the merits of Appellant's claim.

The decision to reopen is left to the sound discretion of the trial court. *Doyle v. State*, 24 S.W.3d 598, 601 (Tex. App.—Corpus Christi 2000, pet. ref'd).  The trial judge has the discretion to reopen a case to introduce additional evidence if that evidence is vital to "due administration of justice." Tex. Code Crim. Proc. Ann. art. 36.02 (Vernon 2007).  The trial judge should therefore reopen the case if the evidence would materially change the case in the proponent's favor.  *Peek v. State*, 106 S.W.3d 72, 79 (Tex. Crim. App.

28

2003).  A trial court's decision to reopen and allow the State to prove venue is not an abuse of discretion.  *See, e.g.*, *Cox v. State*, 494 S.W.2d 574, 575 (Tex. Crim. App. 1973); *Martin v. State*, 160 Tex. Crim. 364, 366–67, 271 S.W.2d 279, 280 (1954).  A trial court's decision to reopen is discretionary even when the motion to reopen was responsive to defendant's motion for directed verdict.  *Boatright v. State*, 472 S.W.2d 765, 770 (Tex. Crim. App. 1971); *Wall v. State*, 878 S.W.2d 686, 690 (Tex. App.—Corpus Christi 1994, pet. ref'd); *Wolf v. State*, 674 S.W.2d 831, 842 (Tex. App.—Corpus Christi 1984, pet. ref'd), *overruled on other grounds*, *Reed v. State*, 744 S.W.2d 112 (Tex. Crim. App. 1988).

Appellant asks this court to create an exception to the trial court's discretion to reopen that would prevent the State from waiting until the last minute to prove the essential elements of the offense.  We decline Appellant's invitation to depart from settled law.  *See Garcia v. State*, 829 S.W.2d 796, 800 (Tex. Crim. App. 1992) (discouraging courts from "invading the legislature's province by reading into the law that which is clearly not there."), *cert. denied*, 538 U.S. 1059 (2003).  We note that Appellant herself waited until the last available moment to object to venue by raising the issue just before closing arguments.  *See Hernandez v. State*, 198 S.W.3d 257, 268

29

(Tex. App.—San Antonio 2006, pet. ref'd) (stating venue is presumed unless raised at trial); *see also* Tex. R. App. P. 44.2(c)(1).

Because the trial court had the discretion to reopen the evidence and allow the State to prove its venue allegations and Appellant has not shown an abuse of that discretion, we overrule her fifth issue.

## IV.    Fair Notice

In her sixth issue, Appellant contends the indictment deprived her of fair notice of the charges against her as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and article I, section nineteen of the Texas Constitution.[8] We review Appellant's argument under a de novo standard because the sufficiency of a charging instrument presents a question of law.  *State v. Barbernell*, 257 S.W.3d 248, 251–52 (Tex. Crim. App. 2008)

All defendants have a constitutional right to notice of the specific charge against them in state and federal courts.  *Cole v. Arkansas*, 333 U.S. 196, 201, 68 S. Ct. 514, 517 (1948).  The Sixth Amendment requires that the defendant

---

[8] Because Appellant has not argued that the protections in the Texas Constitution exceed or differ from the protections in the United States Constitution regarding this point, we only address Appellant's arguments under the United States Constitution. *See Arnold v. State*, 873 S.W.2d 27, 33 (Tex. Crim. App. 1993), *cert. denied*, 513 U.S. 830 (1994).

be apprised of the "nature and cause" of the accusation against him with such clarity and detail that he can adequately prepare a defense. *Moff*, 154 S.W.3d at 601; *Garcia v. State*, 981 S.W.2d 683, 685 (Tex. Crim. App. 1998). A reviewing court therefore looks to the indictment to determine whether notice was sufficient. *See Lawrence*, 240 S.W.3d at 916 (applying state and federal constitutional protections). Indictments that follow the language of the criminal statute under which a defendant is charged provide adequate notice. *Id.* Indictments need not define terms when a statutory definition is available. *State v. Laird*, 208 S.W.3d 667, 669 (Tex. App.—Fort Worth 2006, no pet.) (citing *Daniels v. State*, 754 S.W.2d 214, 218 (Tex. Crim. App. 1988) (applying state and federal constitutional provisions)).

Appellant's notice argument, like her sufficiency arguments, hinges on what she identifies as the distinction between "real" bombs and "hoax" or fake bombs; she argues that the State indicted her for possessing a hoax bomb but prosecuted her for possessing a real bomb.

But as we explained in our sufficiency analysis, section 46.01(13) does not distinguish between real and fake bombs; both can be "hoax" bombs if they otherwise meet the statutory definition. The State indicted Appellant for possessing a hoax bomb and prosecuted her for possessing a hoax bomb, regardless of whether the bomb was real or fake, live or inert. The statutory

31

definition of hoax bomb is broad enough to include real bombs. The indictment was not required to set out the statutory definition of a hoax bomb. *See id.* Thus, the indictment for possessing a hoax bomb was notice to Appellant of the specific charge against her, even if the evidence showed that the practice bomb was a real bomb. We overrule Appellant's sixth issue.

## V.     Lost Evidence

In Appellant's final issue, she argues that because the State lost the practice bomb before trial, the trial court erred by not granting Appellant's combined motion in arrest of judgment/motion for new trial. Appellant further contends the failure to preserve the bomb denied her due course of law under article I, section nineteen of the Texas constitution.

To preserve her complaint, Appellant was required to submit this issue to the trial court. *See* Tex. R. App. P. 33.1(a)(1); *Carroll v. State*, 266 S.W.3d 1, 3 (Tex. App.—Waco 2008, pet. ref'd). Neither Appellant's combined motion in arrest of judgment/motion for new trial nor her motion to quash raised this argument. Therefore, she forfeited her complaint. *See Mendez v. State*, 138 S.W.3d 334, 338–39 (Tex. Crim. App. 2004) (en banc); *see also Carroll*, 266 S.W.3d at 3 (holding that defendant forfeited her spoliation argument by not raising objection at trial). We overrule Appellant's seventh issue.

**Conclusion**

Having overruled all of Appellant's issues, we affirm the trial court's judgment.

ANNE GARDNER
JUSTICE

PANEL:  DAUPHINOT, GARDNER, and WALKER, JJ.

DAUPHINOT, J. concurs without opinion.

PUBLISH

DELIVERED:  August 26, 2009