**Affirmed and Memorandum Opinion filed May 19, 2016.**



In The

# Fourteenth Court of Appeals

## NO. 14-15-00309-CR

### ROBERT DOWNING, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 356th District Court
Hardin County, Texas
Trial Court Cause No. 21382**

## M E M O R A N D U M   O P I N I O N

Appellant Robert Downing appeals from his conviction for evading arrest with a motor vehicle. After a jury found appellant guilty, the trial court assessed his punishment at five years in prison, probated for five years. In two issues, appellant contends that he received ineffective assistance of counsel and that the trial court erred in charging the jury on the offense of evading arrest with a motor

vehicle.  We affirm.[1]

## I. Background

Texas Department of Public Safety Trooper Grant Belvin testified that around 10 p.m. on October 8, 2011, he observed appellant riding a motorcycle well in excess of posted speeds on a United States highway, measured at 101 miles per hour.  Belvin activated the overhead lights on his patrol vehicle and pursued appellant.  When appellant exited the highway, Belvin activated his siren and continued pursuit.  Appellant made a right turn and then increased his speed. When appellant turned again, Belvin was able to "pull up alongside of him." Appellant then stopped in a residential yard, and Belvin exited his vehicle with his gun drawn and instructed appellant to "get on the ground."  Belvin stated that based on the circumstances, he believed appellant was attempting to evade arrest. As Belvin was placing appellant under arrest, appellant's wife came out of a nearby house.  Belvin acknowledged placing his knee on appellant's back while handcuffing him but denied intentionally kicking appellant.

Belvin's vehicle is equipped with a video camera, and a recording of the events in question was played for the jury.  The video shows the pursuit as well as the stop in a residential yard.  At some point after Belvin orders appellant to the ground, appellant's wife tells Belvin that appellant cannot hear what Belvin is saying because he has earplugs in his ears.  Belvin responds that he pulled one out, but appellant says that Belvin just pulled out the string attached to the earplug and not the earplug itself.  Appellant additionally tells Belvin, "You kicked me in the ass.  You kicked me in the back, and my back hurts."  Belvin replies, "I sure did,"

---

[1] The Texas Supreme Court transferred this case to our court from the Ninth Court of Appeals.  *See* Tex. Gov't Code § 73.001.  Accordingly, we must decide the case in accordance with the precedent of the Ninth Court of Appeals.  *See* Tex. R. App. P. 41.3.

to which appellant adds, "I know you did." When Belvin asks appellant why he ran from Belvin, appellant indicates that he could not hear Belvin's siren because of the earplugs.

In his testimony, appellant admitted he was probably speeding at the time in question but denied reaching 101 miles per hour. Appellant explained that he did not hear any sirens because of the earplugs and he did not see the lights from Belvin's vehicle until he was about to stop anyway. Appellant further asserted that Belvin had placed his knee in appellant's back and had kicked appellant several times in the buttocks while he was on the ground. Appellant's wife testified that appellant was wearing earplugs that night. She did not see Belvin kick appellant, but she said that Belvin admitted kicking appellant.

During deliberations, the jury asked to see and was shown the videotape a second time. As will be discussed in more detail below, the jury charge contained some incorrect language in the definitional section referencing "[t]he offense of resisting arrest, search, or transportation," which was not a charged offense in this case. The jury found appellant guilty of evading arrest with a motor vehicle.

## II.    Assistance of Counsel

### A.  Standards of Review

In his first issue, appellant contends he received ineffective assistance from his trial counsel. An appellate court reviews the effectiveness of counsel according to the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 689 (1984). Under this standard, a defendant must (1) demonstrate that trial counsel's performance was deficient and fell below an objective standard of reasonableness, and (2) "affirmatively prove prejudice by showing a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

3

been different." *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).

Review of a trial counsel's performance is highly deferential, as there is a "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance; that is, [appellant] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689. Ordinarily, trial counsel should be afforded an opportunity to explain his or her actions, and in the absence of such opportunity, an appellate court should not find deficient performance unless the challenged conduct was so outrageous that no competent attorney would have engaged in it. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). The appellant bears the burden of proving by a preponderance of the evidence that counsel was ineffective, and any allegations of ineffectiveness must be firmly founded in the record. *Thompson*, 9 S.W.3d at 813. Rarely will the trial record on direct appeal contain sufficient information to permit a reviewing court to fairly evaluate the merits of a claim of ineffective assistance of counsel. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). In the majority of cases, the appellant is unable to meet the first prong of the *Strickland* test because the record on direct appeal is undeveloped. *Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007).

A sound trial strategy may be imperfectly executed, but the right to effective assistance of counsel does not entitle a defendant to errorless or perfect counsel. *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006). "[I]solated instances in the record reflecting errors of omission or commission do not render counsel's performance ineffective, nor can ineffective assistance of counsel be established by isolating one portion of trial counsel's performance for examination." *McFarland v. State*, 845 S.W.2d 824, 843 (Tex. Crim. App. 1992),

*overruled on other grounds by Bingham v. State*, 915 S.W.2d 9 (Tex. Crim. App. 1994). Finally, "[i]t is not sufficient that the appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence." *Mata*, 226 S.W.3d at 430. Rather, to establish that the attorney's acts or omissions were outside the range of professionally competent assistance, appellant must show that counsel's errors were so serious that he was not functioning as counsel. *Patrick v. State*, 906 S.W.2d 481, 495 (Tex. Crim. App. 1995).

## B. Pretrial Motions and Requests

Appellant raises a plethora of complaints against his trial counsel. He begins by pointing out that trial counsel did not file certain pretrial documents, including a request for the State to reveal any extraneous offenses it intended to present at trial, an election for the trial judge to assess punishment, and a pre-trial motion for community supervision. However, he does not suggest what the filing of any of these documents would have accomplished. He does not identify any extraneous offenses the state attempted to introduce at trial, and since the trial judge assessed punishment and gave appellant community supervision, it is of no moment that such requests or motions were not made before trial began. Appellant has failed to meet either prong of *Strickland* in regards to these pretrial documents. *See Thompson*, 9 S.W.3d at 812; *see also Martin v. State*, 265 S.W.3d 435, 442 (Tex. App.—Houston [1st Dist.] 2007, no pet.) ("The mere failure to file pretrial motions does not categorically constitute ineffective assistance."); *Ryan v. State*, 937 S.W.2d 93, 104 (Tex. App.—Beaumont 1996, pet. ref'd) (stating same).

Appellant next complains that counsel failed to file a motion in limine to keep the prosecutor from mentioning a recent case of some notoriety in the same county, a case involving vehicular manslaughter. The prosecutor indeed asked

5

Belvin during his testimony, "You weren't part of the Crystal Boyett deal here in Lumberton, were you, where she came flying through from Jasper and killed those people?" Belvin replied that he was not involved in the case. Although, in hindsight, a motion in limine preventing the State's mentioning of the unrelated case may have been a good idea, it is difficult to say that failure to anticipate the prosecutor's question fell below the range of professionally competent assistance, *see Patrick*, 906 S.W.2d at 495, particularly since the cases were wholly unrelated. Given the "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance," we conclude that failure to file a motion in limine regarding the *Boyett* case did not demonstrate deficient performance by counsel. *Strickland*, 466 U.S. at 689; *see also Wert v. State*, 383 S.W.3d 747, 757 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ("Absent a record regarding counsel's trial strategy, we may not speculate as to why counsel did not file discovery motions, interview State witnesses, or file a motion in limine.").

## C. Proving up Venue of Offense

Next, appellant contends that his counsel failed to realize that the State had failed to establish on direct examination of its first witness that the offense occurred within Hardin County. Appellant asserts that had counsel so realized, he could have passed the first witness without cross-examination questions, which would have prevented the State from proving up venue on redirect examination of that witness, and moved for a directed verdict on that basis when the State rested following the testimony of the State's other witness.[2] The State need only prove that venue is appropriate in the county in which the prosecution occurs by a preponderance of the evidence. Tex. Code Crim. Proc. Art. 13.17; *Meraz v. State*,

---

[2] Appellant refers to Belvin as the State's "one and only witness." However, the State also called appellant's wife to testify in its case in chief.

6

415 S.W.3d 502, 506 (Tex. App.—San Antonio 2013, pet. ref'd). "Venue . . . may be proved by circumstantial as well as direct evidence. It is sufficient if from the evidence the jury may reasonably conclude that the offense was committed in the county alleged." *Rippee v. State*, 384 S.W.2d 717, 718 (Tex. Crim. App. 1964); *see also Sudds v. State*, 140 S.W.3d 813, 816-17 (Tex. App.—Houston [14th Dist.] 2004, no pet.). A directed verdict is proper when, viewing all of the evidence in the light most favorable to the State after it rests, no rational trier of fact could find the disputed element of the crime beyond a reasonable doubt. *See Canales v. State*, 98 S.W.3d 690, 693 (Tex. Crim. App. 2003); *see also Berg v. State*, No. 01-03-01140-CR, 2005 WL 375346, at *9 (Tex. App.—Houston [1st Dist.] Feb. 17, 2005, pet. ref'd) (mem. op., not designated for publication).

Here, Belvin expressly testified that on the day of the offense, he was assigned to Hardin County. He further stated that at the time of the offense, he was conducting stationary radar on the south side of the city of Lumberton. Accordingly, in his direct examination, there was at least some evidence on which the jury could have concluded that the offense occurred in Hardin County. *See Garcia v. State*, No. 13-05-480-CR, 2006 WL 2089592, at *1 (Tex. App.—Corpus Christi July 27, 2006, no pet.) (mem. op., not designated for publication) (holding trial court did not err in denying motion for directed verdict where officer testified he was employed by Aransas County Sheriff's office and was dispatched at time in question to an address within the county). In addition, even if the State had not asked Belvin venue questions on redirect examination, it would have had the opportunity during the direct testimony of appellant's wife to prove Hardin County venue.

Moreover, a trial judge has discretion to reopen a case to permit additional evidence on venue. *See Ahmad v. State*, 295 S.W.3d 731, 746-47 (Tex. App.—

7

Fort Worth 2009, pet. ref'd) (citing *Cox v. State*, 494 S.W.2d 574, 575 (Tex. Crim. App. 1973), and *Martin v. State*, 160 Tex. Crim. 364, 366–67, 271 S.W.2d 279, 280 (1954)). Indeed, a trial judge is required to reopen a case when proffered evidence is "necessary to a due administration of justice." Tex. Code. Crim. Proc. 36.02; *see also Peek v. State*, 106 S.W.3d 72, 79 (Tex. Crim. App. 2003) ("[W]e conclude that a 'due administration of justice' means a judge should reopen the case if the evidence would materially change the case in the proponent's favor."). Trial counsel may have reasonably determined, based on his knowledge of where appellant was arrested, that even if the State had not already produced sufficient evidence to establish venue, it would have been allowed to reopen after counsel moved for a directed verdict. Counsel may therefore have reasonably decided not to make such a motion and risk confusing or distracting the jury. Appellant's venue argument does not meet the first prong of *Strickland*. *See Thompson*, 9 S.W.3d at 812.

### D. Evidence, Argument, and the Jury Charge

Appellant additionally contends that his counsel was deficient in failing to replay the video to rebut Belvin's assertion that he did not intentionally kick appellant in the back during the arrest. Appellant argues that this would have impeached Belvin's credibility. As set forth above, appellant can be heard on the videotape telling Belvin, "You kicked me in the ass. You kicked me in the back, and my back hurts," to which Belvin replies, "I sure did." The video, however, was played shortly before Belvin denied kicking appellant; it therefore would have been fresh in the minds of the jurors, and replaying the video immediately would have been of questionable value and possibly not permitted by the judge.[3]

---

[3] Page 21 of volume 3 of the reporter's record reflects that the video was then played for the jury. Belvin's denial appears on page 31.

8

Furthermore, this same portion of the video has Blevin asking appellant, "why did you run from me . . . . I had my lights and siren on since [highway] 69, you were going 101 miles per hour." Additionally, it should be noted that both appellant and his wife referenced Belvin's "I sure did" comment in their testimony, and counsel mentioned it during closing argument and encouraged the jury to watch the video again. During deliberations, the jury then requested and was permitted to view the videotape a second time. We finally note that apart from questioning Belvin's credibility, the issue of whether Belvin kicked appellant during his arrest is irrelevant to the question of appellant's guilt for the offense charged.

Appellant next faults his trial counsel for failing to get a photograph entered into evidence purportedly showing bruises appellant sustained during his arrest. Appellant attempted to get the photograph admitted through the testimony of appellant's wife, but as she did not appear to have a good memory of the circumstances under which the photograph was taken and had no direct knowledge of how appellant incurred the bruising depicted, the trial court denied admission. Appellant insists, however, that counsel should have tried to get the photograph admitted during appellant's testimony. Regardless of the photograph's admissibility and whether counsel should have made additional efforts to have it admitted, the impact of the photograph would have been minimal, even assuming it showed bruising as the result of intentional kicking by Belvin. The jury saw the video from which it could have concluded that Belvin indeed had kicked appellant during the arrest, appellant and his wife also testified to Belvin's admission, and the jury saw the video a second time during deliberations. Also, as noted above, whether Belvin kicked appellant might go to Belvin's credibility but it had little else to do with appellant's guilt. Thus, even if failure to obtain admission of the photograph could be considered deficient performance, we cannot agree that but

9

for the failure, the result of the proceeding would have been different. *See Thompson*, 9 S.W.3d at 812.

Appellant next contends that counsel failed to properly prepare him to testify, interview and prepare his wife to testify, and interview his neighbor, who can be seen briefly in the video. Appellant, however, does not cite to anything in the record supporting these assertions. Allegations of ineffectiveness must be firmly founded in the record. *Id*. at 813.

Appellant further argues his counsel was deficient in failing to point out a number of things related to the video and appellant's failure to pull over during the pursuit, including that Belvin was not particularly close to appellant for much of the pursuit and thus appellant would not have seen Belvin's flashing lights or heard his siren, the roads on which they travelled were curvy, and a motorcyclist has a heightened need to concentrate on the road in front of him and not on sights and sounds from behind. Appellant's assertions are debatable. Moreover, the jurors saw the video twice and were fully capable of coming to their own conclusions regarding what they observed, the distances involved in the pursuit, the extent to which appellant should have been able to notice Belvin's lights, and the curviness of the road. It must also be noted that both during his examination of witnesses and his closing argument, counsel in fact did concentrate on such matters as appellant's lack of awareness of Belvin until Belvin pulled alongside, appellant's use of earplugs and goggles, and his concentration on things other than what was behind him. Moreover, because this is a direct appeal and there was no record developed below regarding counsel's reasons for the decisions he made, we presume that his actions were part of a valid trial strategy. *See id*. at 814; *see also Martinez v. State*, 313 S.W.3d 358, 364 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) (presuming on silent record that counsel's failure to question prospective

jurors on particular issue was strategic decision).

Appellant next points out that his counsel failed to elicit the precise distances travelled during Belvin's pursuit. The videotape, however, was clearly the best evidence of what happened that night, and it is unlikely specific distances would have had much of an impact on the jury. Appellant asserts his counsel failed to effectively argue that appellant possessed no intent to evade, but to the contrary, counsel repeatedly presented evidence and argument indicating appellant's lack of awareness of Belvin until Belvin pulled alongside of appellant near appellant's home. These arguments do not meet the first prong of *Strickland* by demonstrating deficient performance. *See Thompson*, 9 S.W.3d at 812. Lastly, appellant complains that his counsel failed to object to the jury charge because it contained incorrect language in the definitional section. As explained in the next section of this opinion, the problem with the charge was inconsequential to appellant's conviction. Accordingly, even if counsel should have objected, the failure to object did not result in a different outcome of the trial. *See id.*

## III. Jury Charge

In his second issue, appellant contends that the trial court erred in its submission of the jury charge because the abstract, or definitional, portion of the charge included language appropriate for a different offense. The charge begins by stating appellant has been charged with evading arrest with a motor vehicle and alleges the date and place of the alleged offense. The abstract portion continues, stating, "A person commits an offense if he intentionally flees from a person he knows is a peace officer attempting lawfully to arrest or detain him." This language is derived directly from Penal Code section 38.04. Tex. Penal Code § 38.04(a). However, while that Penal Code section further provides that evading arrest is a third-degree felony if "the actor uses a vehicle while the actor is in

11

flight," Texas Penal Code section 38.04(b)(2)(A), the charge in this case provided that: "The offense of *resisting arrest, search, or transportation* is a felony if the person uses a vehicle while in flight." (Emphasis added.)

Clearly, the italicized language was erroneous as it referenced a different offense not charged or otherwise raised by evidence or argument in this case. When error is found in submission of a jury charge, the degree of harm necessary for reversal depends upon whether the appellant preserved the error by raising a proper objection in the trial court. *Olivas v. State*, 202 S.W.3d 137, 144 (Tex. Crim. App. 2006); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g). If the defendant properly objected, reversal is required if "some harm" resulted to the defendant's rights. *Olivas*, 202 S.W.3d at 144 n.21. If no objection was raised, reversal is required only if the error was so egregious and created such harm that the defendant has not had "a fair and impartial trial." *Marshall v. State*, 479 S.W.3d 840, 843 (Tex. Crim. App. 2016). Regardless of which standard is to be applied, "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171; *see also Elizondo v. State*, No. PD-1039-14, 2016 WL 1359341, at *12-16 (Tex. Crim. App. Apr. 6, 2016) (applying factors to determine whether "some harm" occurred).

Here, although appellant did not object to the charge, on appeal he contends his trial counsel provided ineffective assistance of counsel in failing to so object. Accordingly, we will consider whether the charge error resulted in some harm. *See Green v. State*, 891 S.W.3d 289, 299 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd) (assessing ineffective assistance claim based on failure to object to erroneous

charge under "some harm" standard of review); *see also Sammy v. State*, No. 01–11–00774–CR, 2013 WL 6198317, at *7 (Tex. App.—Houston [1st Dist.] Nov. 26, 2013, pet. ref'd) (mem. op., not designated for publication) (following *Green*). Because we determine that the erroneous charge language resulted in no harm to appellant, we likewise conclude that there was no egregious harm.

The purpose of a jury charge is to instruct jurors on the law applicable to the case. *Vasquez v. State*, 389 S.W.3d 361, 366 (Tex. Crim. App. 2012). A charge must contain an accurate statement of the law and set out all the essential elements of the offense. *Id.* The Court of Criminal Appeals further explained in *Vasquez* that:

> The application paragraph is that portion of the jury charge that applies the pertinent penal law, abstract definitions, and general legal principles to the particular facts and the indictment allegations. Because that paragraph specifies the factual circumstances under which the jury should convict or acquit, it is the "heart and soul" of the jury charge.

*Id*. at 366-67.

Here, the language appellant complains about consists of five clearly incorrect words in the abstract portion of the charge and pertains only to the level of offense. The remainder of the abstract portion, as well as the pivotal application section, properly set forth the elements of the offense charged. *See Green*, 891 S.W.2d at 299 (holding that although mental state definitions were erroneous, no harm resulted where application portion of charge properly focused on the result of defendant's conduct and not the nature of the conduct). Thus, looking at the charge as a whole, it appears the erroneous language had little or no impact on the jury and appellant suffered no harm as a result. Moreover, it was clear from the evidence and argument of counsel at trial that appellant was being prosecuted for

13

evading arrest with a motor vehicle, not "resisting arrest, search, or transportation." *See Almanza*, 686 S.W.2d at 171 (instructing that harm must be assayed in light of the entire jury charge, the state of the evidence, and argument of counsel). The record additionally does not reveal any indication that the jury was confused or otherwise mislead by the charge. *See Gelinas v. State*, 398 S.W.3d 703, 709 (Tex. Crim. App. 2013) (plurality op.) (noting the absence of a note from jurors expressing confusion regarding contradictory language in charge). Furthermore, "the very clarity of the error may have mitigated any resulting harm." *Id*. at 707. The erroneous language indeed appears so out of place in the charge that the jury would have been alerted to the fact that it resulted from a typographical error. *See id*. For these reasons, we conclude that the erroneous language in the charge caused no harm to appellant.

Finding no merit in any of appellant's arguments, we overrule his two issues and affirm the trial court's judgment.

/s/      Martha Hill Jamison
             Justice

Panel consists of Justices Jamison, Donovan, and Brown.
Do Not Publish — TEX. R. APP. P. 47.2(b).