**Affirmed and Opinion filed October 11, 2012.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-11-01062-CR

---

**ANTHONY WERT, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Criminal Court at Law No. 12**
**Harris County, Texas**
**Trial Court Cause No. 1730748**

---

## O P I N I O N

Appellant Anthony Wert appeals his conviction for misdemeanor assault. After the jury found him guilty, the trial court sentenced him to one year in Harris County Jail, suspended his sentence, and placed him on community supervision for one year. In three issues, appellant claims he received ineffective assistance of counsel. Specifically, appellant argues his counsel was ineffective because he (1) did not file a motion to suppress or object to the admissibility of appellant's custodial statement; (2) did not object to a variance between the State's information and the jury charge; (3) did not

request a jury instruction on defense of property; and (4) committed cumulative errors. We affirm.

## *Background*

On January 9, 2011, at approximately 2:00 a.m., appellant, while intoxicated, was driving away from a local bar when he was stopped by a police officer. The officer gave appellant a courtesy ride home. Appellant's girlfriend was waiting for appellant in his second floor apartment when he arrived. At approximately 3:00 a.m., appellant informed his girlfriend that he planned to walk back to the bar to retrieve his car. In an attempt to stop him from leaving, appellant's girlfriend took his shoes. As appellant tried to take the shoes from his girlfriend, he pushed her, causing her to fall and hit her head. An unknown person called the police to report domestic violence.

Two officers arrived at the apartment at approximately 3:30 a.m. After the first officer knocked on the door, appellant waited a few minutes before answering it. He finally opened the door approximately two feet and stood in the threshold. When the first officer asked appellant to step outside, appellant replied, "no," in an aggressive voice and tried to slam the door in the officer's face. The second officer suspected "some type of violence . . . was going on" because he could hear a woman crying inside the apartment. The first officer put her foot in the threshold and again told appellant to step outside. She grabbed his arm, and he began to struggle with her at the door. The second officer also grabbed appellant's arm, pulled him outside onto the porch, and told him to sit down in a chair outside the door.

Appellant, still apparently intoxicated,[1] was "very aggressive," "very belligerent," disrespectful, and uncooperative. The first officer was "concerned about [appellant's] being violent." Appellant yelled at the second officer, saying the officers "ha[d] no right to go inside of his apartment." Appellant also kept trying to get back inside. In response

---

[1] The first officer testified she smelled alcohol on appellant's "breath and person [and] he had slurred speech, . . . watery eyes, poor balance, . . . [and] needed assistance . . . whenever he was standing."

2

to the second officer's command to "calm down," appellant "continued to get up and spin around." The officer handcuffed appellant, sat him on the ground, and told him "to chill out, behave." In response to appellant's continued attempts to get up, the second officer eventually took appellant to the patrol car. As the officer led him to the patrol car, appellant was "uncooperative" and pulled away. The officer testified that appellant was not being arrested, but was being detained while the first officer completed her investigation:

> The fact that we were on a balcony, he continued to ignore all the commands that I was giving him, I didn't want to risk injury to himself [sic] or to me or other persons out on the scene. So, I thought it would be better to place him in a patrol car where he would be secured.

He also testified appellant was still "really belligerent" at that point. The first officer also testified that, when an officer is concerned that a person may be violent, "[i]f he's cooperative, we'll sit him down, like we did [appellant]. If he continues to be belligerent and uncooperative, generally he gets handcuffed. If he still continues to act belligerent and uncooperative, then we'll put him in an area where he's contained."

In the meantime, the first officer announced she was entering the apartment, and appellant's girlfriend responded she was in the bathroom. She came out of the bathroom crying and holding a Ziploc bag with ice on her head. The officer saw a small pool of blood on the floor in front of the left corner of a futon in the front room. Droplets of blood trailed from there to the bathroom, and more droplets were on the bathroom floor and sink. Appellant's girlfriend told the officer that appellant pushed her and she hit her head, apparently on the corner of the futon, and received a small gash on her head.

After speaking with appellant's girlfriend, the first officer went to the patrol car to get appellant's side of the story. She testified she had not decided yet to arrest appellant. She did not read appellant his *Miranda*[2] rights because "he was not in custody when I

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 478-79 (1966) (prohibiting use of oral statement of accused made as result of custodial interrogation unless statutory warnings are given and accused knowingly, intelligently, and voluntarily waives rights).

talked to him," but he was not free to leave "until the investigation was done." The officer asked appellant, "[W]hat happened[?]" Appellant said his girlfriend tried to stop him from getting his shoes, so he pushed her and she hit her head. Defense counsel did not object to the admissibility of this statement at trial.

### *Discussion*

We review claims of ineffective assistance of counsel under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986). Under *Strickland*, an appellant must prove that his trial counsel's representation was deficient and that the deficient performance was so serious that it deprived appellant of a fair trial. *Strickland*, 726 S.W.2d at 687. To establish the first prong, an appellant must show that counsel's performance fell below an objective standard of reasonableness. *Id*. at 688. Regarding the second prong, an appellant must demonstrate that counsel's deficient performance prejudiced his defense. *Id*. at 692. To demonstrate prejudice, an appellant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. at 694; *see also Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011) (explaining that "reasonable probability" as used in the prejudice prong is "probability sufficient to undermine confidence in the outcome" of the proceeding) (citing *Strickland*, 466 U.S. at 687). Failure to make the required showing of either deficient performance or sufficient prejudice defeats the claim of ineffectiveness. *Strickland*, 466 U.S. at 697.

Our review of defense counsel's performance is highly deferential, beginning with the strong presumption that the attorney's actions were reasonably professional and were motivated by sound trial strategy. *Jackson v, State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). Rarely will the trial record contain sufficient information to permit a reviewing court to fairly evaluate the merits of a claim of ineffective assistance of counsel. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). In the majority of cases, the appellant is unable to meet the first prong of the *Strickland* test because the record on direct appeal is undeveloped. *Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim.

4

App. 2007).  When the record is silent as to trial counsel's strategy, we will not conclude that appellant received ineffective assistance unless the challenged conduct was "'so outrageous that no competent attorney would have engaged in it.'"  *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005).  A sound trial strategy may be imperfectly executed, but the right to effective assistance of counsel does not entitle a defendant to errorless or perfect counsel.  *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006).  "[I]solated instances in the record reflecting errors of omission or commission do not render counsel's performance ineffective, nor can ineffective assistance of counsel be established by isolating one portion of trial counsel's performance for examination."  *McFarland v. State*, 845 S.W.2d 824, 843 (Tex. Crim. App. 1992), *overruled on other grounds by Bingham v. State*, 915 S.W.2d 9 (Tex. Crim. App. 1994).

Finally, "[i]t is not sufficient that the appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence."  *Mata*, 226 S.W.3d at 430.  Rather, to establish that the attorney's acts or omissions were outside the range of professionally competent assistance, appellant must show that counsel's errors were so serious that he was not functioning as counsel. *Patrick v. State*, 906 S.W.2d 481, 495 (Tex. Crim. App. 1995).

## I.     Motion to Suppress

In his first issue, appellant complains of his counsel's failure to file a motion to suppress or object to the admissibility of appellant's confession elicited while he was handcuffed in the back of the patrol car.  A trial counsel's failure to file a motion to suppress is not per se ineffective assistance of counsel.  *See Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986).  Counsel is not required to engage in the filing of futile motions. *Mooney v. State*, 817 S.W.2d 693, 698 (Tex. Crim. App. 1991).  Rather, to satisfy the *Strickland* test and prevail on an ineffective assistance claim premised on counsel's failure to file a motion to suppress, an appellant must show by a preponderance of the evidence that the motion to suppress would have been granted and that the remaining evidence would have been insufficient to support his conviction.  *Jackson v. State*, 973

5

S.W.2d 954, 956–57 (Tex. Crim. App. 1998). To meet his burden, appellant was required to produce evidence that would defeat the presumption of proper police conduct. *Id*. at 957.

Appellant argues that his confession was inadmissible under *Miranda v. Arizona* because the police did not give him the required statutory warnings after putting him in handcuffs into the back of the patrol car before he confessed. 384 U.S. 436. *Miranda* prohibits the use of an oral statement of an accused made as a result of custodial interrogation unless statutory warnings are given and the accused knowingly, intelligently, and voluntarily waives any rights set out in the warnings. *Id*. at 478-79. *Miranda* applies only to custodial interrogation. *Id*. at 444; *Dowthitt v. State*, 931 S.W.2d 244, 263 (Tex. Crim. App. 1996). A person is in "custody" only if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest. *Dowthitt*, 931 S.W.2d at 254 (citing *Stansbury v. California*, 511 U.S. 318, 322 (1994)). The subjective intent of law enforcement officials to arrest is irrelevant unless that intent is somehow communicated or otherwise manifested to the suspect. *Id*. The placing of handcuffs on a defendant does not, in and of itself, mean he is in custody. *Balentine v. State*, 71 S.W.3d 763, 771 (Tex. Crim. App. 2002).

In *Balentine*, the Court of Criminal Appeals held that the suspect was not in custody when he was handcuffed and placed in a patrol car because those actions were reasonably necessary to ensure the officer's safety. *Id*. Here, both officers testified appellant was "aggressive," "belligerent," "uncooperative," and potentially "violent." He struggled with the first officer when she tried to enter the apartment, refused to sit in a chair, and kept trying to go back inside the apartment. The first officer testified that she was "concerned about [appellant's] being violent," and the second officer handcuffed appellant in response to appellant's repeated attempts to get up and eventually took appellant to the patrol car to prevent "injury to himself or to me or to other persons out on the scene." The first officer testified these steps were consistent with police protocol

regarding how to treat a person who may be violent. She also testified she was still investigating the incident when she went to the patrol car and asked appellant what happened. *See id.* ("The investigative detention did not evolve into an arrest simply because appellant was escorted to the patrol car and handcuffed. [The officer] did only that which was reasonably necessary to ensure his own safety while investigating appellant's possible involvement[.]"); *see also Turner v. State*, 252 S.W.3d 571, 580 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) (holding that suspect was not in custody when officer handcuffed him for officer safety while transporting him to police station).

Appellant has not presented evidence to defeat the presumption that the officers' conduct was proper so that a motion to suppress would have been granted. *See Jackson*, 973 S.W.2d at 956–57. Moreover, in light of the officers' testimony, counsel may have concluded that the statement was admissible. Absent a record regarding counsel's trial strategy, we may not rely on mere speculation to find counsel's performance deficient. *See Perez v. State*, 56 S.W.3d 727, 731–32 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) (overruling ineffective assistance claim when trial counsel failed to object on constitutional grounds to State's use of appellant's statement). We overrule appellant's first issue.

## II.    Variance Between Information and Jury Charge

In his second issue, appellant complains that his counsel did not object to a variance between the State's information and the jury charge. The State charged appellant with "unlawfully[,] intentionally **and** knowingly caus[ing] bodily injury to [the complainant]," whereas, the jury charge allowed the jury to find appellant guilty if it found appellant "unlawfully, intentionally, knowingly, **or** recklessly cause[d] injury to [the complainant]." (Emphasis added.) During closing arguments, the prosecutor stated, "You plead in the affirmative but really it's 'or'[:] intentionally, knowingly, or

7

recklessly."[3] Appellant argues his counsel should have objected to this statement by the prosecutor and to the use of the word "or" in the jury charge on the ground that appellant's Fourteenth Amendment right to due process of law was violated because the information alleged one offense, but the State proved another.

It is proper for the jury to be charged in the disjunctive even though the indictment (or information)[4] may allege the differing methods of committing the offense in the conjunctive. *Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991). In this connection, alternative theories of committing the same offense are properly submitted to the jury in the disjunctive if the evidence is sufficient to support a finding under any of the theories submitted. *Id.*; *see also Rosales v. State*, 4 S.W.3d 228, 231 (Tex. Crim. App. 1999) (holding although indictment may allege manner and means of committing offense in the conjunctive, jury may be charged in the disjunctive and a conviction on any method alleged will be upheld if the evidence supports it). This comports with the Fourteenth Amendment's guarantee of due process of law, under which a defendant may not be convicted and deprived of his liberty except upon proof beyond a reasonable doubt. *See Villareal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009).

In assessing the sufficiency of the evidence to support a conviction under the Fourteenth Amendment, we must consider all of the record evidence in the light most favorable to the verdict, and must determine whether, based on that evidence and reasonable inferences therefrom, any rational factfinder could have found the defendant guilty of all the elements of the offense beyond a reasonable doubt. *Id.* (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In that analysis, the elements of the offense are

---

[3] The State filed a motion to amend the information that the trial court never ruled on, but the motion did not include a request to amend the language in the information discussed here.

[4] Appellant was charged with misdemeanor assault by information. Indictments and informations are both charging instruments. They do not differ in any material respect for purposes of our analysis. *See* Tex. Code Crim. Proc. art. 27.01 ("The primary pleading in a criminal action on the part of the State is the indictment or information."); *see also McFadden v. State*, 728 S.W.2d 444, 445 (Tex. App.—Austin 1987, writ ref'd) ("'[I]ndictment' refers to felony prosecutions and 'information or complaint' refers to misdemeanor prosecutions.").

defined by the hypothetically correct jury charge for the case. *Id.*; *see also Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically correct jury charge "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Villareal*, 286 S.W.3d at 327; *Malik*, 953 S.W.2d at 240.

The hypothetically correct jury charge in this case would include the elements of the charged offense as follows: appellant "intentionally, knowingly, or recklessly cause[d] bodily injury to [the complainant]." Tex. Penal Code § 22.01(a)(1) (listing elements of assault); *see Villareal*, 286 S.W.3d at 327. The following evidence was adduced at trial—appellant's girlfriend told the investigating officer that appellant pushed her while trying to retrieve his shoes, which caused her to fall, hit her head, and receive a gash, and appellant corroborated that account of the incident. A rational jury could have found beyond a reasonable doubt that appellant intentionally, knowingly, or recklessly injured his girlfriend when he pushed her. *See Villareal*, 286 S.W.3d at 328. Thus, the charge submitted to the jury was correct, and appellant was not deprived of his Fourteenth Amendment right to due process of law merely because the information alleged the methods of committing assault in the conjunctive. *See id.*; *see also Kitchens*, 823 S.W.2d at 258. Defense counsel did not err by failing to object to the prosecutor's jury argument or the jury charge. We overrule appellant's second issue.

### III.    Defense of Property

In his third issue, appellant complains that his counsel did not request a defense of property instruction to be included in the jury charge on the ground that appellant was entitled to use force to retrieve his shoes from his girlfriend.

Counsel's strategy at trial was to claim appellant accidentally pushed his girlfriend in an attempt to retrieve his shoes. This strategy is inconsistent with asserting a defense of property. Section 9.41 of the Penal Code allows

[a] person unlawfully dispossessed of . . . tangible, moveable property by

9

another [to use] force against the other when and to the degree the actor reasonably believes the force is immediately necessary to . . . recover the property if the actor uses the force immediately or in fresh pursuit after the dispossession and . . . reasonably believes the other had no claim of right when he dispossessed the actor[.]

Tex. Penal Code § 9.41(b)(1). Defense of property, therefore, involves an intentional use of force to recover one's property, whereas counsel's argument that appellant accidentally pushed his girlfriend centers on a lack of intent. *See Ex parte Nailor*, 149 S.W.3d 125, 133-34 (Tex. Crim. App. 2004) (holding trial counsel was not deficient in failing to request instruction on self defense when his strategy was to argue the complainant was accidentally injured). Appellant has not established that his trial counsel was deficient in failing to request an instruction on defense of property. *See id*.; *see also Marlow v. State*, 886 S.W.2d 314, 316 (Tex. App.—Houston [1st Dist.] 1994, writ ref'd) (holding defense counsel was not ineffective for choosing as matter of trial strategy to proceed with only one of several available theories of defense). We overrule appellant's third issue.

## IV. Cumulative Errors

In his fourth issue, appellant alleged his counsel committed other errors that, along with counsel's failure to file a motion to suppress or object to the jury charge, amounted cumulatively to ineffective assistance. He asserts that his counsel also erroneously failed to (1) file pretrial discovery motions, (2) interview the State's trial witnesses, (3) file a pretrial motion in limine, and (3) object to leading questions and hearsay. As set forth above, defense counsel did not err by failing to file a motion to suppress or object to the jury charge. *See Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999) (noting although a number of errors may be found harmful in their cumulative effect, non-errors may not, in their cumulative effect, amount to error); *see also Melancon v. State*, 66 S.W.3d 375, 381 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) (same). We thus turn to appellant's other contentions.

**Pretrial Motions and Discovery**. Appellant argues that his counsel should have

filed discovery motions and interviewed the State's witnesses which "would have uncovered [appellant's] statement to the police officer and . . . [his girlfriend's] statements to the police officer and the medical personnel." However, appellant fails to show that this evidence (or any other evidence) was not disclosed to defense counsel by the State or that there was any evidence unknown and helpful to appellant which could have been uncovered by means of filing discovery motions or interviewing the State's witnesses. *See Passmore v. State*, 617 S.W.2d 682, 685 (Tex. Crim. App. 1981) (declining to find counsel deficient when "there [was] no showing as to what type of informal discovery occurred in the instant cause"), *overruled on other grounds by Reed v. State*, 744 S.W.2d 112 (Tex. Crim. App. 1988); *see also In re K.M.H.*, 181 S.W.3d 1, 9-10 (Tex. App.—Houston [14th Dist.] 2005, no pet.) ("[W]e may only speculate why counsel did not conduct formal discovery and what such discovery may have revealed.").

Appellant also argues defense counsel should have filed a motion in limine to "limit[] the prosecutor from alluding to such matters as previous assaults on the same victim." Appellant has not shown that any damaging testimony or evidence was presented whose prejudicial effect could have been eliminated by a motion in limine.[5] Even assuming a motion in limine were in order, it would have benefitted appellant little, if at all. A traditional motion in limine is a motion requesting that the opposing party be directed to approach the trial court before offering certain types of evidence or otherwise going into particular areas before the jury. *Geuder v. State*, 115 S.W.3d 11, 14 (Tex. Crim. App. 2003); *Harnett v. State*, 38 S.W.3d 650, 655 (Tex. App.—Austin 2000, pet.

---

[5] Appellant presented one example of the prosecutor alluding to previous assaults on the same victim during voir dire:

> A habitual, what does that mean? She's been assaulted many times by the same guy, he's beating on her, right? Here's what the rules of evidence say: I'm not allowed to bring that up. I am not by law allowed to say just because he's beaten her a hundred times before means he beat her this time. The law says I can't bring that to you. So knowing that, knowing that you'll never know about the past violence, does that change your opinion?

Assuming without deciding that the prosecutor's statements and questions were improper, appellant has not shown that his counsel could have anticipated and included them in a pretrial motion in limine.

11

ref'd). A ruling on a motion in limine is not on the merits and only relates to the administration of the trial. *Harnett*, 38 S.W.3d at 655. Motions in limine do not preserve error whether the motion is granted or denied. *Webb v. State*, 760 S.W.2d 263, 275 (Tex. Crim. App. 1988); *Harnett*, 38 S.W.3d at 655.

Absent a record regarding counsel's trial strategy, we may not speculate as to why counsel did not file discovery motions, interview State witnesses, or file a motion in limine. *See Passmore*, 617 S.W.2d at 685; *see also In re K.M.H.*, 181 S.W.3d at 9-10. These purported omissions by defense counsel do not show that he was deficient. *See McFarland*, 845 S.W.2d at 843 (noting isolated omissions in record do not render counsel's performance ineffective).

**Failures to Object**. Appellant finally complains that his counsel did not object to leading questions regarding the elements of misdemeanor assault or to hearsay regarding testimony elicited from one of the officers at trial.[6] These failures to object to potentially inadmissible testimony are not sufficient, in themselves, to constitute deficient performance. *See Ingham v. State*, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984) ("An isolated failure to object to certain procedural mistakes or improper evidence does not constitute ineffective assistance of counsel."); *see also Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999) (holding presumption of strategy not rebutted when record was "silent as to why appellant's trial counsel failed to object to the State's persistent attempts to elicit inadmissible hearsay"). Moreover, appellant was required to provide authority in support of his argument that the objections would have been meritorious, which he did not do. *See Melonson v. State*, 942 S.W.2d 777, 782 (Tex. App.—Beaumont 1997, no pet.); *see also Valdes–Fuerte v. State*, 892 S.W.2d 103, 112 (Tex. App.—San Antonio 1997, no pet.). Appellant has not carried his burden of rebutting the presumption that counsel's conduct might be considered sound trial strategy. The record is silent as to why counsel did not make these objections, and we may not speculate on

---

[6] The officer testified he had heard on the radio that appellant received a courtesy ride home from another officer earlier on the night of the offense.

12

this issue.  *Jackson*, 877 S.W.2d at 771.

Considering the totality of circumstances, we find that counsel's performance was not deficient based on cumulative errors.  *See Thompson*, 9 S.W.3d at 813 (noting appellate court looks to totality of circumstances and particular circumstances of each case in evaluating effectiveness of counsel).  We overrule appellant's fourth issue.

We affirm the judgment of the trial court.


/s/      Martha Hill Jamison
Justice

Panel consists of Justices Boyce, Christopher and Jamison.

Publish — TEX. R. APP. P. 47.2(b).