

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-13-00143-CR

Jesus Angel **GARCIA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 2, Bexar County, Texas
Trial Court No. 348009
Honorable Jason Wolff, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:    Karen Angelini, Justice
Marialyn Barnard, Justice
Rebeca C. Martinez, Justice

Delivered and Filed:  March 12, 2014

AFFIRMED

Jesus Angel Garcia appeals his conviction for driving while intoxicated. In one issue, Garcia argues he received ineffective assistance of counsel because his trial counsel failed to file a motion to suppress evidence obtained from an unlawful traffic stop. We affirm.

### TRIAL TESTIMONY

Evidence obtained by Officer Colt Arnold during a traffic stop led to Garcia's arrest and conviction for driving while intoxicated. Garcia's argument on appeal is based on portions of Officer Arnold's trial testimony. On direct examination, Officer Arnold testified that, on the

occasion in question, he was traveling northbound on North New Braunfels at 1:38 a.m. when he saw the vehicle Garcia was driving. Officer Arnold noticed the temporary tag on Garcia's vehicle and "ran the plate." He explained that if the car had been recently purchased, it would have had a tag that said "Texas Buyer" on the top, and that this tag would have had the vehicle identification number and the buyer's name and address. He further explained that there is another kind of tag, called a demonstration tag, which is used for test drives when a dealer is trying to sell a car. According to Officer Arnold, a demonstration tag—which has zeros for the vehicle identification number and zeros for the year and make of the vehicle—is not registered to a specific vehicle; a demonstration tag is a generic tag that is used on multiple vehicles for a short amount of time for test drives. Officer Arnold testified that when he ran a check on the tag on Garcia's vehicle, it came back as a demonstration tag, meaning it was for test drives. And, based on Officer Arnold's training and experience, he knew that nobody should be doing a test drive in the middle of the night. Further, Officer Arnold knew it was common practice for people to steal cars and put temporary tags on them to avoid detection by law enforcement. Based on the time of night, the demonstration tag, and the common practice of putting these types of tags on stolen vehicles, Officer Arnold conducted an investigative stop of Garcia's vehicle. On cross-examination, Officer Arnold confirmed that his attention was drawn to Garcia's vehicle based on its "paper tag," which turned out to be a demonstration tag. Officer Arnold also stated that having an improper demonstration tag on a vehicle was a registration violation.

INEFFECTIVE ASSISTANCE OF COUNSEL

To establish ineffective assistance of counsel, a defendant must show by a preponderance of the evidence that (1) his trial counsel's performance was deficient, and (2) the deficient performance prejudiced him to such a degree as to deprive him of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Hernandez v. State*, 988 S.W.2d 770, 772 (Tex. Crim. App.

1999). To meet the first prong of the *Strickland* standard, the defendant must show that counsel's performance fell below an objective standard of reasonableness and must rebut the presumption that counsel's trial decisions were based on sound trial strategy. *Thompson v. State*, 9 S.W.3d 808, 812-14 (Tex. Crim. App. 1999). Any allegations of ineffectiveness must be firmly founded in the record. *Id*. at 814. To establish the second prong of *Strickland*, the defendant must show prejudice, that is, a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). A "reasonable probability" is one sufficient to undermine confidence in the outcome. *Id*.

Where the defendant claims counsel was ineffective for failing to urge a motion to suppress, he must prove that the motion to suppress would have been granted. *Jackson v. State*, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998); *Wert v. State*, 383 S.W.3d 747, 753 (Tex. App.—Houston [14th Dist.] 2012, no pet.). The defendant has the burden of developing facts and details to defeat the presumption of proper police conduct. *Jackson*, 973 S.W.3d at 957; *Wert*, 383 S.W.3d at 753.

### REASONABLE SUSPICION

Generally, a police officer may stop and briefly detain a person for investigative purposes on less information than is constitutionally required for probable cause to arrest. *Terry v. Ohio*, 392 U.S. 1 (1968); *Foster v. State*, 326 S.W.3d 609, 613 (Tex. Crim. App. 2010). To do so, however, the officer must be able to articulate something more than an "inchoate and unparticularized suspicion or 'hunch'." *Terry*, 392 U.S. at 21; *Foster*, 326 S.W.3d at 613. The officer must point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion. *Terry*, 392 U.S. at 27; *Foster*, 326 S.W.3d at 613. In other words, the officer must have reasonable suspicion that some crime was, or is about

to be committed, before he may make an investigative stop. *State v. Duran*, 396 S.W.3d 563, 568 (Tex. Crim. App. 2013); *Francis v. State*, 922 S.W.2d 176, 178 (Tex. Crim. App. 1996).

"The possibility of an innocent explanation does not deprive the officer of the capacity to entertain reasonable suspicion of criminal conduct." *Woods v. State*, 956 S.W.2d 33, 37-38 (Tex. Crim. App. 1997) (holding that the "as consistent with innocent activity as with criminal activity" construct was no longer a viable test for determining reasonable suspicion). The reasonableness of an investigative stop must be examined in terms of the totality of the circumstances. *Id.* at 38; *Carroll v. State*, 56 S.W.3d 644, 650 (Tex. App.—Waco 2001, pet. ref'd).

### DISCUSSION

Garcia contends he was denied effective assistance of counsel when trial counsel failed to pursue a pre-trial motion to suppress evidence that was obtained as a result of the traffic stop. Specifically, Garcia argues that his traffic stop was unlawful because Officer Arnold was mistaken about the law governing the use of temporary dealer tags. "An officer's mistake about the law, or about the legal significance of undisputed facts, *even if* eminently reasonable, cannot serve to provide probable cause or reasonable suspicion." *Robinson v. State*, 377 S.W.3d 712, 722 (Tex. Crim. App. 2012) (emphasis in original); *see Abney v. State*, 394 S.W.3d 542, 550 (Tex. Crim. App. 2013).

Garcia's contention is that, although Officer Arnold believed a temporary tag was only for test drives, Texas Transportation Code section 503.062(b)(2) also permits a dealer to allow a customer to temporarily operate a "loaner" vehicle with such a tag while the customer's vehicle is being repaired. *See* TEX. TRANSP. CODE § 503.062(b)(2) (West 2013). Thus, according to Garcia, Officer Arnold was mistaken in his belief that a vehicle with a temporary tag can never be driven lawfully in the middle of the night. Garcia argues this mistake about the law means that Officer

Arnold had no reasonable suspicion to initiate the traffic stop. Garcia further argues that the use of a temporary tag was entirely consistent with innocent, lawful behavior.

Under section 503.067(b) of the Texas Transportation Code, "[a] person may not operate a vehicle that displays an unauthorized temporary tag." TEX. TRANSP. CODE ANN. § 503.067(b) (West 2013). And, although section 503.062(b)(2) allows "a customer to operate a vehicle temporarily while the customer's vehicle is being repaired," *see* TEX. TRANSP. CODE § 503.062(b)(2), section 503.0626(a) mandates the development of a secure, real-time database of information on vehicles to which dealers have affixed temporary tags. *See* TEX. TRANSP. CODE § 503.0626(a) (West 2013). This database allows law enforcement agencies to use the vehicle-specific number assigned to and displayed on a tag to obtain information about the dealer that owns the vehicle. *See* TEX. TRANSP. CODE § 503.0626(b) (West 2013). Further, the Texas Administrative Code explicitly requires dealer tags on "loaner" vehicles to reflect vehicle-specific information, including a vehicle-specific number from the database, the year and make of the vehicle, the vehicle identification number, and the date of the tag's expiration. *See* 43 TEX. ADMIN. CODE § 215.154(b-4),(j) (2014) (Tex. Dept. of Motor Vehicles, Motor Vehicle Distribution).

The evidence fails to establish that Officer Arnold was mistaken about the law. In his testimony, Officer Arnold explained two types of temporary tags (buyer tags and demonstration tags), but he did not say that these were the only types of temporary tags that could be affixed to a vehicle. And, if Garcia's vehicle was a "loaner" vehicle as Garcia now suggests, the tag on his vehicle should have contained some vehicle-specific information under the relevant statutory and administrative provisions. *See* TEX. TRANSP. CODE § 503.0626(a),(b); 43 TEX. ADMIN. CODE § 215.154(b-4),(j). Nevertheless, the evidence shows the tag on Garcia's vehicle was generic in nature. The evidence further shows that when Officer Arnold ran a check on the tag on Garcia's vehicle, it came back as a demonstration tag, meaning it was for test drives.

The State emphasizes that Officer Arnold testified not only that he believed there was a registration violation, but also that he knew from experience that it is common practice for vehicle thieves to steal cars and place demonstration tags on them to avoid detection. The State argues that given the totality of the circumstances—the time of night, the demonstration tags, and the officer's training and experience—Officer Arnold had reasonable suspicion to make an investigative stop. We agree with the State.

After examining the totality of the circumstances, we conclude that Officer Arnold had reasonable suspicion to justify stopping Garcia for investigative purposes. Therefore, even if Garcia's counsel had pursued a motion to suppress the evidence obtained from the traffic stop, Garcia has failed to prove that the motion would have been granted. Accordingly, we do not find ineffective assistance of counsel, and we affirm the trial court's judgment.

Karen Angelini, Justice

Do not publish