**Opinion issued July 30, 2015**



**In The**

# Court of Appeals

**For The**

# First District of Texas

————————————

**NO. 01-14-00685-CR**

————————————

**KANAVIUS DORSEY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 262nd District Court**
**Harris County, Texas**
**Trial Court Case No. 1408986**

---

**MEMORANDUM OPINION**

A jury convicted appellant, Kanavius Dorsey, of the first-degree felony

offense of aggravated robbery, and the trial court assessed punishment at twenty

years' confinement.[1]  In two issues, appellant contends that (1) the State failed to present sufficient evidence that he committed the robbery and (2) his trial counsel rendered ineffective assistance by failing to move to suppress the complainant's pre-trial identification of him and by failing to challenge the complainant's in-court identification of him.

We affirm.

## Background

Around 4:00 o'clock on the afternoon of November 1, 2013, seventy-two-year-old Alice Fusilier, the complainant, stopped by her bank in northeast Houston and withdrew several hundred dollars to pay her utility bills.  Fusilier next stopped at a gas station to purchase some cigarettes from the convenience store.  As Fusilier got out of her car, she noticed a maroon or "reddish" colored "fairly new" car with black-tinted windows pull into the gas station's parking lot and stop.  A man got out of the passenger seat of the car, and Fusilier passed him on the sidewalk as she walked to the convenience store.  She stepped against the wall of the store to let the man pass by, and after he passed her, the man hit her in the head with his closed fist and snatched her purse.  The man ran back to the car and jumped into the passenger seat before the car drove away.  Fusilier tried to see the

---

[1]  *See* TEX. PENAL CODE ANN. § 29.03(a)(3) (Vernon 2011) (providing that person commits offense of aggravated robbery if he commits robbery and causes bodily injury to another person who is sixty-five years of age or older).

2

license plate number of the car and then used the convenience store's phone to call 9-1-1.

Fusilier testified that she got a "good look" at the man both before he hit her and as he ran back to the car. She also stated that the car had a black and white license plate, that the license plate number started with either "BMW" or "BWM," and that the plate number ended with "25." She told police officers that she was not sure of the car's make or model, but that it might have been a Mercury or a Honda. Fusilier identified appellant in court as the man who robbed her. She also testified that nearly three weeks after the offense Houston Police Department ("HPD") officers showed her two photo-arrays. She did not identify anyone in the first photo array. She identified appellant in the second photo-array and stated that, at the time, she "did not know for sure if that was the right person. But [she] had a feeling that [she] had seen this person, but [she] didn't know where [she] could have seen him from unless he was the one that attacked [her]." She further testified, "Now that I see [appellant] here in court, I strongly feel that he's the one that attacked me." Defense counsel did not object to any of this testimony, nor did he move to suppress Fusilier's pre-trial identification or object to her in-court identification of appellant.

On cross-examination, Fusilier testified that, immediately after the robbery, she gave a description of the suspect to HPD Officer L. Patterson. She described

3

her assailant as a young black male who had a medium complexion and was approximately 5'7" or 5'8" tall.[2] She stated that when she saw appellant's picture in the photo-array, she "felt like [she] had seen this person or that this person resembled the person that attacked [her]." She recalled that she definitively said to the officer showing her the photo-arrays that appellant "was the one." Fusilier also had the following exchange with defense counsel:

| | |
|---|---|
| [Counsel]: | And you stated you met with the DA before this case, correct? |
| [Fusilier]: | Last week. |
| [Counsel]: | All right. And did you talk about this case with her? |
| [Fusilier]: | Last week. |
| [Counsel]: | Did you see any photographs of [appellant] that day? |
| [Fusilier]: | Yes. |
| [Counsel]: | All right. How many photographs did you see? |
| [Fusilier]: | Two, I think. |
| [Counsel]: | Two different ones? |
| [Fusilier]: | Yes. |
| [Counsel]: | All right. Did you get to look at them for a while? |
| [Fusilier]: | Just asked me if I identify him. |
| [Counsel]: | Okay. And you had also seen photographs of [appellant] before that, correct? |
| [Fusilier]: | Yes. |

_____

[2] Fusilier agreed, on cross-examination, that appellant's complexion is "dark." Further, HPD Officer Rocchi testified that appellant is 6'1" tall.

4

| [Counsel]: | And you would agree you've seen all those photographs before making the identification of him here in court today, right? |
| --- | --- |
| [Fusilier]: | Yes. |

Defense counsel did not challenge Fusilier's in-court identification on the basis that the State had shown her additional pictures of appellant which might have tainted this identification.

HPD Officer M. Rocchi testified that on November 6, 2013, he was conducting surveillance in the parking lot of Fusilier's bank when he saw a maroon 2008 Chevrolet Malibu with "limo tinted," or "completely blacked out," windows pull into the parking lot. The license plate, which was black and white, read BB2N125. Officer Rocchi followed the car as it left the bank, and he eventually observed the driver, appellant, get out of the car. The car was registered to a man named Prince Woods, who was the passenger in the car at the time of the stop. When police conducted an inventory search of this car, they did not find any items belonging to Fusilier.

HPD Officer R. Gray, a robbery investigator, testified that when he spoke with Fusilier after the incident she gave him two possible license plate numbers: BW2225 and BW2M25. Officers discovered appellant in a car with the license plate BB2N125, and Officer Gray testified that if someone quickly looked at the license plate, the "N and the 1 could look like an 'M.'" Officer Gray prepared two

photo-arrays, the first of which contained a picture of Prince Woods, and the second of which contained appellant's picture. Officer Gray did not administer these photo arrays to Fusilier himself, but he instead gave them to HPD Sergeant D. Hartford, who did not know who the suspects were or where their pictures were placed in the arrays.

Officer Gray also testified concerning the different types of identifications that witnesses can make when viewing photo-arrays: (1) a positive identification, in which the witness is "positive" that the person in the array is the suspect; (2) a strong-tentative identification, in which the witness essentially says, "[I]t really, really looks like that person right there[,] but I don't want to say I'm sure"; (3) a weak-tentative identification, in which the witness says, "[I]t kind of looks like this person, but I'm not sure"; and (4) a negative identification, in which the witness says, "I don't recognize anyone on this [array] or it's none of these." After viewing the photo array that contained appellant's picture, Fusilier made a "strong tentative" identification of appellant.

Sergeant Hartford testified that Fusilier did not identify anyone in the first photo-array that he showed her. When she saw the second photograph in the second photo-array, appellant's photograph, Fusilier "kind of stiffened, her eyes got wide and she put that photo to the side as opposed to the others when she went through the first stack." She told Sergeant Hartford that the second picture "really

6

looked like the man that punched her in the head" and that "[t]he facial features appeared to be the same as she remembered."

Appellant called his girlfriend, Chasity Smith, to testify on his behalf. Smith testified that November 1, 2013, was her mother's birthday and that she and appellant arrived at her mother's house around 3:30 or 4:00 p.m. and stayed there for "most of the day" celebrating. She testified that appellant, who had driven them to her mother's house, did not leave at any point because he would have had to drive her car and she does not let appellant drive her car if she is not there with him. Smith at first testified that she does not know anyone named Prince Woods, but she later admitted on cross-examination that she has heard the name as someone who associates with appellant.

The jury ultimately found appellant guilty of the offense of aggravated robbery, and the trial court assessed punishment at twenty years' confinement. This appeal followed.

## Sufficiency of the Evidence

In his first issue, appellant contends that the State failed to present sufficient evidence that he committed aggravated robbery.

### A. Standard of Review

When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict to determine whether any rational fact

7

finder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Adames v. State*, 353 S.W.3d 854, 859 (Tex. Crim. App. 2011) (holding that *Jackson* standard is only standard to use when determining sufficiency of evidence). The jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Bartlett v. State*, 270 S.W.3d 147, 150 (Tex. Crim. App. 2008). A jury may accept one version of the facts and reject another, and it may reject any part of a witness's testimony. *See Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); *see also Henderson v. State*, 29 S.W.3d 616, 623 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) (stating jury can choose to disbelieve witness even when witness's testimony is uncontradicted).

We may not re-evaluate the weight and credibility of the evidence or substitute our judgment for that of the fact finder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We afford almost complete deference to the jury's credibility determinations. *See Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008). We resolve any inconsistencies in the evidence in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000); *see also Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) ("When the record supports conflicting inferences, we presume that the factfinder resolved the

8

conflicts in favor of the prosecution and therefore defer to that determination."). Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to establish guilt. *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011) (quoting *Clayton*, 235 S.W.3d at 778). "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). In reviewing the sufficiency of the evidence, we consider all of the evidence in the record, "both direct and circumstantial, whether admissible or inadmissible." *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999).

### B. Aggravated Robbery

To establish that appellant committed the offense of aggravated robbery as charged in the indictment, the State had to prove that appellant, while in the course of committing a theft of property owned by Alice Fusilier, and with intent to obtain and maintain control of the property, intentionally and knowingly caused bodily injury to Fusilier, a person at least sixty-five years old, by striking her with his hand. *See* TEX. PENAL CODE ANN. § 29.03(a)(3) (Vernon 2011). The State is required to prove, beyond a reasonable doubt, that the defendant is the person who committed the charged crime. *Roberson v. State*, 16 S.W.3d 156, 167 (Tex. App.—Austin 2000, pet. ref'd). "[T]he identity of the alleged perpetrator may be

proven by circumstantial evidence." *Orellana v. State*, 381 S.W.3d 645, 653 (Tex. App.—San Antonio 2012, pet. ref'd) (citing *Welch v. State*, 993 S.W.2d 690, 693 (Tex. App.—San Antonio 1999, no pet.)). The State may also establish identity by inferences. *Roberson*, 16 S.W.3d at 167. "For the purposes of proving guilt beyond a reasonable doubt, direct and circumstantial evidence are equally probative." *Id.* (citing *McGee v. State*, 774 S.W.2d 229, 238 (Tex. Crim. App. 1989)). "[A] direct in-court identification is the preferred procedure" for establishing the identity element of an offense. *Wiggins v. State*, 255 S.W.3d 766, 771 (Tex. App.—Texarkana 2008, no pet.).

Here, the robbery occurred outside a convenience store around 4:00 in the afternoon when it was still light outside and visibility was good. Fusilier testified that she got a "good look" at the man who robbed her, both as the perpetrator walked toward her before the robbery occurred and as the perpetrator ran back to the car after the robbery. Although Fusilier's initial description of the robber to police—that he was approximately 5'7" or 5'8" tall and was a black male with a "medium" complexion—did not accurately describe appellant, who is 6'1" tall and who has a "dark" complexion, Fusilier identified appellant as the robber both in a pre-trial photo-array and in court. Upon viewing the photo-array, Fusilier gave a "strong tentative" identification of appellant as the robber, stating that she "did not know for sure" if appellant was the robber but that she "felt like [she] had seen this

10

person or that this person resembled the person that attacked [her]." Fusilier stated that she did not know where she could have seen the person she identified "unless he was the one that attacked [her]." Fusilier also identified appellant in court as the man who robbed her, testifying, "Now that I see him here in court, I strongly feel that he's the one that attacked me."

On appeal, appellant argues that Fusilier's pre-trial identification was tentative and her in-court identification unreliable. However, defense counsel did not object to the admission of Fusilier's pre-trial identification or to Fusilier's in-court identification. Furthermore, even if appellant had objected to this testimony, we may consider this evidence when conducting our sufficiency review. *See Dewberry*, 4 S.W.3d at 740 (noting that, in sufficiency of evidence review, we consider all evidence in record, both direct and circumstantial, whether admissible or inadmissible).

The State also presented evidence that, after the robbery, Fusilier spoke with police officers and informed them that the robber jumped in the passenger seat of a red or maroon four-door, newer model sedan with dark tinted windows. She told the officers that she was not sure of the make or model of the car, but that it might have been a Mercury or a Honda. She also told the officers that she saw a black and white license plate on the car and that the license plate number began with either "BMW" or "BWM" and ended with "25." Officer Rocchi testified that

11

several days after the robbery, he was conducting surveillance at Fusilier's bank when he saw a 2008 maroon Chevrolet Malibu pull into the parking lot. This car had extremely dark "limo" tinting on the windows and a black and white license plate with a number that read BB2N125. Officer Gray testified that if someone quickly looked at the license plate, the "N and the 1 could look like an 'M.'" Officer Rocchi followed the car as it left the bank's parking lot and eventually made contact with its occupants, including appellant, who was driving. All of this evidence points to appellant as being the individual who robbed Fusilier.

Having viewed all of the evidence in the light most favorable to the verdict, as we must when reviewing the sufficiency of the evidence, we conclude that the State presented sufficient evidence that appellant committed the charged robbery.

We overrule appellant's first issue.

## Ineffective Assistance of Counsel

In his second issue, appellant contends that his trial counsel rendered constitutionally ineffective assistance by (1) failing to file a motion to suppress Fusilier's pre-trial identification of him, and (2) failing to challenge Fusilier's in-court identification of him.

### A. *Standard of Review*

To establish that trial counsel rendered ineffective assistance, an appellant must demonstrate, by a preponderance of the evidence, that (1) his counsel's

performance was deficient and (2) there is a reasonable probability that the result of the proceeding would have been different but for his counsel's deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010); *Cannon v. State*, 252 S.W.3d 342, 348–49 (Tex. Crim. App. 2008). The appellant's failure to make either of the required showings of deficient performance and sufficient prejudice defeats the claim of ineffective assistance. *Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003); *see also Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009) ("An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong.").

The appellant must first show that his counsel's performance fell below an objective standard of reasonableness. *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). The second prong of *Strickland* requires the appellant to demonstrate prejudice—"a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Thompson*, 9 S.W.3d at 812. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

13

We indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and, therefore, the appellant must overcome the presumption that the challenged action constituted "sound trial strategy." *Id.* at 689, 104 S. Ct. at 2065; *Williams*, 301 S.W.3d at 687. Our review is highly deferential to counsel, and we do not speculate regarding counsel's trial strategy. *See Bone v. State*, 77 S.W.3d 828, 833, 835 (Tex. Crim. App. 2002). To prevail on an ineffective assistance claim, the appellant must provide an appellate record that affirmatively demonstrates that counsel's performance was not based on sound strategy. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001); *see Thompson*, 9 S.W.3d at 813 (holding that record must affirmatively demonstrate alleged ineffectiveness).

In the majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions. *Mallett*, 65 S.W.3d at 63; *see also Massaro v. United States*, 538 U.S. 500, 505, 123 S. Ct. 1690, 1694 (2003) ("If the alleged error is one of commission, the record may reflect the action taken by counsel but not the reasons for it. The appellate court may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive or was taken because the counsel's alternatives were even worse. The trial record may contain no evidence of alleged errors of omission, much less the reason underlying them.") (internal citations

omitted). Because the reasonableness of trial counsel's choices often involves facts that do not appear in the appellate record, the Court of Criminal Appeals has stated that trial counsel should ordinarily be given an opportunity to explain his actions before a court reviews the record and concludes that counsel was ineffective. *See Rylander*, 101 S.W.3d at 111; *Bone*, 77 S.W.3d at 836.

## B. Failure to Challenge Pre-trial and In-Court Identifications

Trial counsel's failure to file a motion to suppress is not per se ineffective assistance of counsel. *Wert v. State*, 383 S.W.3d 747, 753 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (citing *Kimmelman v. Morrison*, 477 U.S. 365, 384, 106 S. Ct. 2574, 2587 (1986)). Counsel is not required to perform a useless or futile act. *See Ex parte Chandler*, 182 S.W.3d 350, 356 (Tex. Crim. App. 2005) ("But a reasonably competent counsel need not perform a useless or futile act."); *Mooney v. State*, 817 S.W.2d 693, 698 (Tex. Crim. App. 1991) ("Counsel is not required to engage in the filing of futile motions."). Rather, to satisfy *Strickland* and prevail on an ineffective assistance claim based on defense counsel's failure to file a motion to suppress, the appellant must show by a preponderance of the evidence that the motion to suppress would have been granted and that the remaining evidence would have been insufficient to support his conviction. *See Wert*, 383 S.W.3d at 753 (citing *Jackson v. State*, 973 S.W.2d 954, 956–57 (Tex. Crim. App. 1998)). Likewise, to succeed on an ineffective assistance claim based on a failure

15

to object, appellant must demonstrate that if trial counsel had objected, the trial court would have erred in overruling the objection. *Oliva v. State*, 942 S.W.2d 727, 732 (Tex. App.—Houston [14th Dist.] 1997, pet. dism'd). Trial counsel's failure to object to admissible evidence does not constitute ineffective assistance of counsel. *Id.*

"An in-court identification is inadmissible when it has been tainted by an impermissibly suggestive pretrial photographic identification." *Gamboa v. State*, 296 S.W.3d 574, 581 (Tex. Crim. App. 2009) (quoting *Loserth v. State*, 963 S.W.2d 770, 772 (Tex. Crim. App. 1998)). Courts use a two-step analysis to determine the admissibility of an in-court identification: (1) whether the out-of-court identification procedure was impermissibly suggestive; and, if so, (2) whether that suggestive procedure gave rise to a substantial likelihood of irreparable misidentification. *Conner v. State*, 67 S.W.3d 192, 200 (Tex. Crim. App. 2001). In determining whether the pretrial identification procedure was so impermissibly suggestive "as to give rise to a very substantial likelihood of irreparable misidentification," we consider the totality of the circumstances. *Gamboa*, 296 S.W.3d at 581–82; *Mendoza v. State*, 443 S.W.3d 360, 363 (Tex. App.—Houston [14th Dist.] 2014, no pet.) ("If the pretrial procedure is found to be impermissibly suggestive, identification testimony would nevertheless be admissible where the totality of the circumstances shows no substantial likelihood

16

of misidentification."); *Burkett v. State*, 127 S.W.3d 83, 88 (Tex. App.—Houston [1st Dist.] 2003, no pet.) ("If sufficient indicia of reliability outweigh suggestiveness, then an identification is admissible."). Factors that we consider when making this determination are: (1) the witness's opportunity to view the defendant at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the defendant; (4) the witness's level of certainty at the time of the confrontation; and (5) the length of time between the offense and the confrontation. *Gamboa*, 296 S.W.3d at 582.

"[I]t is well established that, even where the pre-trial identification procedure is impermissibly suggestive, in-court testimony of an identification witness will still be admissible as long as the record clearly reveals that the witness' prior observation of the accused was sufficient to serve as an independent origin for the in-court identification." *Lesso v. State*, 295 S.W.3d 16, 25 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) (stating such in context of overruling claim of ineffective assistance based on failure to move to suppress in-court identification of defendant); *Rojas v. State*, 171 S.W.3d 442, 449 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) ("[W]hen an in-court identification is based upon knowledge independent from the allegedly improper pre-trial procedure, it is admissible."). An appellant must show by clear and convincing evidence that the

in-court identification has been irreparably tainted to obtain reversal. *Mendoza*, 443 S.W.3d at 363.

Here, appellant concedes that "[t]here is nothing in the record to suggest that the [pre-trial] photo array was suggestive," but he argues that a motion to suppress Fusilier's pre-trial identification "would have been successful due to [Fusilier's] uncertainty and her inaccurate description of her attacker. The trial court could not have been assured that her pre-trial identification was reliable." Fusilier described her attacker to Officer Patterson as a young black male who had a medium complexion and was approximately 5'7" or 5'8" tall. The record contains evidence that appellant has a "dark" complexion and that he is 6'1" tall. Appellant also points to the fact that Fusilier's pre-trial identification of him was "tentative" as a basis for rendering this evidence inadmissible.

As the State points out, however, the fact that Fusilier gave a "strong tentative" identification as opposed to a "positive" identification of appellant after viewing the pre-trial photo-array and the fact that her initial description of her attacker to Officer Patterson differed in two ways from appellant's actual physical appearance are relevant to the weight that the jury should give to Fusilier's pre-trial identification, not to its admissibility. *See Jackson v. State*, 657 S.W.2d 123, 128 (Tex. Crim. App. 1983) (holding such when defense counsel showed witness ten photographs and she identified six photographs as being of defendant when only

18

one photograph was of defendant and when, at trial, witness could not recall clothes perpetrator wore at time of offense).

Furthermore, to the extent appellant argues that the prosecutor's showing Fusilier two pictures of appellant a week before the trial renders Fusilier's pre-trial identification of him inadmissible, we note that Fusilier's pre-trial identification of appellant occurred in November 2013 and appellant did not go to trial until eight months later in July 2014. Thus, the prosecutor's showing of two pictures of appellant to Fusilier could have had no effect on her selection of appellant in the pre-trial photo array. *See id.* ("What the court overlooked was that what occurred at the instigation of defense counsel [showing the witness ten photographs] almost three months after the station house confrontation could not affect the suggestiveness of the confrontation at the time it occurred."). We conclude that appellant has not demonstrated, by a preponderance of the evidence, that Fusilier's pre-trial identification of him was inadmissible and that, therefore, the trial court would have granted a motion to suppress the pre-trial identification. *See Wert*, 383 S.W.3d at 753.

Appellant also argues that "[a] motion to suppress the in-court identification would have also been successful because it was tainted by the unreliable pre-trial photo array and the prosecutor's actions shortly before trial." On cross-examination, defense counsel asked Fusilier whether she had spoken with the

prosecutor before the trial. Fusilier responded that she had, "last week." The

following exchange occurred:

| | |
|---|---|
| [Counsel]: | Did you see any photographs of [appellant] that day? |
| [Fusilier]: | Yes. |
| [Counsel]: | All right. How many photographs did you see? |
| [Fusilier]: | Two, I think. |
| [Counsel]: | Two different ones? |
| [Fusilier]: | Yes. |
| [Counsel]: | All right. Did you get to look at them for a while? |
| [Fusilier]: | Just asked me if I identify him. |
| [Counsel]: | Okay. And you had also seen photographs of [appellant] before that, correct? |
| [Fusilier]: | Yes. |
| [Counsel]: | And you would agree you've seen all those photographs before making the identification of him here in court today, right? |
| [Fusilier]: | Yes. |

The record contains no further information concerning the photographs that

Fusilier viewed when she met with the prosecutor one week before the trial.

Even if the prosecutor's showing of two photographs to Fusilier the week

before trial was impermissibly suggestive, a matter we need not decide, to establish

that defense counsel rendered ineffective assistance by failing to object to

Fusilier's in-court identification of him, appellant must demonstrate that the trial

20

court would have erred in overruling an objection to the in-court identification, which requires a showing that the prosecutor's pre-trial actions gave "rise to a very substantial likelihood of irreparable misidentification." *See Gamboa*, 296 S.W.3d at 582.

The first two factors that we consider in determining whether a pre-trial identification procedure gave rise to a "very substantial likelihood of irreparable misidentification" are the witness's opportunity to view the defendant at the time of the crime and the witness's degree of attention. *See id.* Here, the robbery occurred outside around 4:00 in the afternoon, when it was still daylight. Fusilier testified that she saw a car pull into the gas station and a man climb out of the passenger seat of the car. The man walked towards her and passed directly by her before turning around, hitting her on the back of her head, grabbing her purse, and running back to the car. She stated that she got a "good look" at the man both as he walked toward her and as he ran back to the car. Fusilier thus had a good opportunity to view appellant at the time of the crime, and the fact that she was the victim of the offense indicates that her degree of attention paid to appellant was likely higher than if she had been a mere bystander. *See id.* at 582; *Barley v. State*, 906 S.W.2d 27, 35 (Tex. Crim. App. 1995) ("[T]he witnesses were more than just casual observers of the crime. Therefore, they had more reason to be attentive.").

The third factor to consider is the accuracy of the witness's prior description of the criminal. *See Gamboa*, 296 S.W.3d at 582. As we have already discussed, the initial description of the robber that Fusilier gave to Officer Patterson differed from appellant's physical appearance in two respects—appellant's complexion is "dark" instead of "medium," and he is 6'1" tall instead of 5'7" or 5'8" tall. This factor, therefore, weighs against a finding that the allegedly improper pre-trial procedure did not give rise to a very substantial likelihood of irreparable misidentification. *See id.*

The fourth factor is the witness's level of certainty at the time of the confrontation. *See id.* Although Fusilier gave a "strong tentative" identification of appellant at the time that she viewed the photo-array, stating that she "did not know for sure if that was the right person" but that she "had a feeling that [she] had seen this person, but [she] didn't know where [she] could have seen [appellant] from unless he was the one that attacked [her]," at trial, she testified, "Now that I see [appellant] here in court, I strongly feel that he's the one that attacked me." Thus, at the time of her in-court identification, Fusilier had a high level of certainty that appellant was the one who robbed her.

The fifth factor is the length of time between the offense and the confrontation. *See id.* The robbery occurred on November 1, 2013. Fusilier viewed the photo-arrays and identified appellant on November 18, 2013, seventeen

22

days later. The trial, during which Fusilier identified appellant in court as the robber, occurred in July 2014, eight months after the offense. The eight-month interval does not detract from Fusilier's identification because she consistently identified appellant as the robber and was able to recall details of the offense. *See Delk v. State*, 855 S.W.2d 700, 707 (Tex. Crim. App. 1993) (holding that eighteen-month delay between offense and trial did "not detract from the identification given the details the [witness] was able to recall and the consistency in her testimony"); *Burkett*, 127 S.W.3d at 89 (holding that six-month delay "did not detract from the complainant's identification in this case because of her consistent testimony and ability to recall details").

Thus, the only factor that weighs against a finding that the prosecutor's showing of two photographs of appellant to Fusilier the week before trial did not give rise to a very substantial likelihood of irreparable misidentification is the accuracy of Fusilier's initial description of the robber. When we consider the totality of the circumstances and weigh them against the allegedly improper pre-trial procedure, the trial court could have reasonably found that the procedure did not give rise to a "very substantial likelihood of irreparable misidentification" and could have permissibly denied a challenge to Fusilier's in-court identification. *See Gamboa*, 296 S.W.3d at 582. To establish that defense counsel rendered ineffective assistance by failing to move to suppress Fusilier's pre-trial

23

identification, appellant needed to establish that had defense counsel filed the motion or made the challenge the trial court would have granted the motion to suppress. *See Wert*, 383 S.W.3d at 753. To establish that defense counsel rendered ineffective assistance by failing to object to Fusilier's in-court identification, appellant needed to establish that, had defense counsel objected, the trial court would have erred in overruling the objection. *Oliva*, 942 S.W.2d at 732.

Because appellant did not establish that the trial court would have granted a motion to suppress Fusilier's pre-trial identification or would have erred in overruling an objection to Fusilier's in-court identification, appellant has not demonstrated that defense counsel's failure to move to suppress the pre-trial identification or object to the in-court identification fell below an objective standard of reasonableness. *See Wert*, 383 S.W.3d at 753. Appellant, therefore, cannot establish that defense counsel's failure to move to suppress and failure to object constituted ineffective assistance.

We overrule appellant's second issue.

## Conclusion

We affirm the judgment of the trial court.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Huddle, and Lloyd.

Do not publish.  TEX. R. APP. P. 47.2(b).