

# NUMBER 13-20-00063-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**JOHN ANTHONY KOSHGARIAN,**                                      **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                               **Appellee.**

---

### On appeal from the 186th District Court
### of Bexar County, Texas.

---

## MEMORANDUM OPINION

### Before Justices Benavides, Longoria, and Tijerina
### Memorandum Opinion by Justice Benavides

By three issues, appellant John Anthony Koshgarian challenges his conviction for

possession of a controlled substance between one and four grams, a third-degree felony.

*See* TEX. HEALTH & SAFE. CODE ANN. § 481.015. Koshgarian alleges (1–2) his trial counsel

was ineffective, and (3) the trial court erred by not conducting a hearing on his motion for

new trial. We affirm.

## I. BACKGROUND[1]

On September 9, 2019, in a pre-trial hearing, Koshgarian requested to waive a jury and proceed with a trial before the bench. The trial court admonished Koshgarian about his request to waive a jury trial, asked him if he had discussed his request with his attorney, and if he understood what a "judge-only" trial meant. Koshgarian stated he had discussed it with his attorney, understood what he was doing, and still requested to waive a jury trial. Following the waiver, the State read the indictment and Koshgarian pleaded not guilty. The trial court recessed until the following day to present the State's witnesses.

On September 10, 2019, Koshgarian requested to rescind his waiver of a jury trial. The trial court explained that his trial before the bench, pursuant to his request, had started the day prior and jeopardy had already attached. It then denied Koshgarian's request. Koshgarian also requested to be evaluated for competency, but the trial court stated it had seen no reason to justify a competency evaluation and denied that request.

At trial, the State called Officer Curtis Sanders of the Live Oak Police Department as a witness to testify regarding his interaction with Koshgarian. Officer Sanders said he first saw Koshgarian walking through local hotel parking lots on April 5, 2018, around 1:55 a.m. Officer Sanders saw Koshgarian about thirty minutes later walking past an auto dealership towards a neighborhood. He described the area as a "high crime area" known

---

[1] This case is before this Court on transfer from the Fourth Court of Appeals in San Antonio pursuant to a docket equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001.

for drug sales. Officer Sanders described his initial interaction with Koshgarian as a "friendly encounter," and said that he asked Koshgarian why he was walking in the area. According to Officer Sanders, Koshgarian explained he was waiting for a ride from a friend for the last three hours and when she did not show up, he began walking. Koshgarian also told Officer Sanders his phone had died, and he was looking for a place to charge it. Officer Sanders offered to take Koshgarian near Cibolo, Texas, where Koshgarian said he lived and was trying to get to. Officer Sanders said Koshgarian initially accepted the offer of a ride, but he changed his mind when Officer Sanders told him he would need to pat him down first to search for weapons. Koshgarian stated that Officer Sanders could search the backpack he was carrying but declined to have his person patted down. Officer Sanders explained that he is a K-9 officer, so he went to get his canine to do an open-air sniff around Koshgarian's backpack. Officer Sanders stated his K-9 partner was trained to detect five different types of narcotics and to search articles, not people. The K-9 officer alerted two different times to Koshgarian's backpack. Officer Sanders said because of the positive alerts, he had probable cause to conduct a search of Koshgarian's person, and during that search, he located a bag of marijuana and a bag of methamphetamine.

On cross-examination, Officer Sanders agreed initially there was no probable cause to stop Koshgarian, and he initially stopped to see if Koshgarian needed assistance. On re-direct examination, Officer Sanders stated the area Koshgarian was in was not an area "people normally walk in," especially at 2 a.m. He also testified that he only searched Koshgarian after the K-9 officer alerted to Koshgarian's backpack and

3

found the drugs in Koshgarian's front coin pocket. A body camera video from Officer Sanders was admitted into evidence, which confirmed his version of events although portions of the sound were redacted. A forensic scientist from the Bexar County Crime Lab testified that the narcotics tested positive for methamphetamine. The State rested its case following those witnesses.

Koshgarian testified regarding his version of the events of that evening. He stated he was a 100% disabled United States Navy veteran. Koshgarian explained he had been at a friend's house and left around 8 p.m. to wait for a ride, but his ride never arrived. He said the encounter with Officer Sanders was about two miles from the friend's house, and he told Officer Sanders he was walking home. Koshgarian agreed that Officer Sanders offered him a ride closer to home, but Officer Sanders "creeped" him out and he declined. Koshgarian believed he asked if he was free to leave several times and stated he asked if Officer Sanders was wearing a body camera. Koshgarian explained he felt pressured by Officer Sanders, so he allowed Officer Sanders to search his backpack. Koshgarian testified that after the K-9 officer was placed in Officer Sanders's unit, Koshgarian was "slammed" into the patrol car. As he was being patted down, Koshgarian stated that he saw a bag "fly" over his right shoulder, which he says was the methamphetamine found. He said that he did not know anything about the methamphetamine because it "wasn't his." Koshgarian admitted he did have a small amount of marijuana on his person, but nothing more.

The trial court found Koshgarian guilty, and following a pre-sentence investigation,

sentenced him to ten years' imprisonment in the Texas Department of Criminal Justice—Institutional Division. Following his trial and conviction, Koshgarian retained new counsel for the sentencing phase only. On November 17, 2019, Koshgarian's new counsel filed a motion for new trial prior to his sentence being pronounced. A subsequent motion for new trial was filed on December 2, 2019, which was denied. Koshgarian filed his notice of appeal on December 5, 2019. Appointed appellate counsel filed an "corrected" motion for new trial with the trial court on December 17, 2019. The trial court denied the "corrected" motion for new trial without a hearing on December 18, 2019. This appeal followed.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

By his first and second issues, Koshgarian alleges his trial counsel was ineffective by failing to file pre-trial motions, including a motion to suppress, and failing to object to inadmissible evidence.

### A. Standard of Review and Applicable Law

A defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and under § 10 of article I of the Texas Constitution. U.S. CONST. amend. VI; TEX. CONST. art. I, § 10. The right to counsel, however, does not mean the right to errorless counsel. *Frangias v. State*, 450 S.W.3d 125, 136 (Tex. Crim. App. 2013).

To prevail on a claim of ineffective assistance of counsel, Koshgarian must prove by a preponderance of the evidence that: (1) counsel's performance fell below the standard of reasonableness under prevailing professional norms; and (2) there is a

5

reasonable probability that, taking into account the totality of the evidence before the judge, Koshgarian was prejudiced by counsel's actions or inactions. *See Miller v. State*, 548 S.W.3d 497, 499 (Tex. Crim. App. 2018) (citing *Hill v. Lockhart*, 474 U.S. 52, 58–59 (1985) and *Strickland v. Washington*, 466 U.S. 668, 694 (1984)).

Our review of counsel's representation under the first prong of *Strickland* is highly deferential. We indulge a strong presumption that counsel's conduct falls within a wide range of professional assistance, including the possibility that counsel's actions were strategic. 466 U.S. at 689; *see Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). To evaluate the effectiveness of counsel's performance, we look at the totality of the representation. *See Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006); *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). We consider the adequacy of assistance as viewed at the time of trial, not in hindsight. *Robertson*, 187 S.W.3d at 483. We may not second-guess counsel's strategic decisions, *Frangias*, 450 S.W.3d at 136, and defense counsel's trial strategy cannot be considered ineffective assistance of counsel simply because another attorney would have used a different strategy. *Ex parte Jimenez*, 364 S.W.3d 866, 883 (Tex. Crim. App. 2012).

Any claim for ineffectiveness of counsel must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *See Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001); *Thompson*, 9 S.W.3d at 814. If the record is silent on the motivation behind counsel's tactical decisions, then an appellant usually cannot overcome the strong presumption that counsel's representation was reasonable.

*Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001); *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994).

Because "the record is generally underdeveloped," direct appeal is usually an inadequate vehicle for claims of ineffective assistance of counsel. *Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012). Additionally, courts are hesitant to declare a counsel's performance as deficient until counsel has been afforded an opportunity to explain their reasoning behind their performance. *See id*. For that reason, "we commonly assume a strategic motive if any can be imagined and find counsel's performance deficient only if the conduct was so outrageous that no competent attorney would have engaged in it." *Andrews v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005). The best way to make a sufficient record to support such a claim is by a hearing on an application for writ of habeas corpus or, alternatively, a hearing on a motion for new trial. *See Thompson*, 9 S.W.3d at 814–15; *Jackson*, 877 S.W.2d at 772–73. Only when "counsel's ineffectiveness is so apparent from the record" will an appellant asserting an ineffective assistance of counsel claim prevail on direct appeal. *Freeman v. State*, 125 S.W.3d 505, 506–07 (Tex. Crim. App. 2003).

## B.    Discussion

Koshgarian alleged in his numerous motions for new trial that his trial counsel was ineffective because trial counsel advised him to request a bench trial. On appeal, Koshgarian alleges that trial counsel was ineffective because he did not file any pre-trial motions, including a motion to suppress, and he failed to object to the admission of

7

inadmissible evidence.

However, the failure of trial counsel to file a motion to suppress is not per se ineffective assistance of counsel. *Wert v. State*, 383 S.W.3d 747, 753 (Tex. App.— Houston [14th Dist.] 2012, no pet.); *see Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986). To prevail on an ineffective assistance claim, Koshgarian must show by a preponderance of the evidence that the motion to suppress would have been granted and that the remaining evidence would have been insufficient to support his conviction. *Jackson v. State*, 973 S.W.2d 954, 956–57 (Tex. Crim. App. 1998); *Wert*, 383 S.W.3d at 753. To meet his burden, Koshgarian was required to produce evidence that would defeat the presumption of proper police conduct. *Jackson*, 973 S.W.3d at 957.

Koshgarian argues he was (1) illegally detained and (2) his person was searched without probable cause or a warrant. Although Koshgarian argues that there was conflicting evidence presented at the trial as to whether he was detained or free to leave, the trial court was able to view the video from Officer Sanders's body camera and hear testimony from Officer Sanders and Koshgarian to resolve any potential conflicting evidence. Koshgarian states that had a motion to suppress been filed and denied by the trial court, he would have been able to put the issue of detention in front of a jury. However, Koshgarian waived his right to a jury trial, and although he now alleges he did not waive his right voluntarily or knowingly, the trial court admonished him repeatedly before accepting his waiver. Therefore, Koshgarian has not produced evidence to defeat the presumption of proper police conduct regarding his detention. *See id.*

8

Additionally, Koshgarian alleges his person was searched illegally. Evidence was presented that Koshgarian granted Officer Sanders permission to search the backpack he was wearing on his person when he was initially approached. Officer Sanders testified, and the body camera video confirmed, that the K-9 officer alerted to Officer Sanders when performing the open-air sniff. The trial court allowed this evidence at trial. Although Koshgarian views the evidence in a different manner, he has not presented evidence to defeat the presumption that Officer Sanders's conduct was proper here. *See id.* In light of the testimony and video evidence presented, trial counsel may have concluded that the detention and search was valid and legal. Absent a record regarding trial counsel's trial strategy, we may not rely on mere speculation to find counsel's performance defective. *See Wert*, 383 S.W.3d at 754.

We cannot find that "counsel's ineffectiveness is so apparent from the record" in this situation in order for Koshgarian to prevail on direct appeal. *Freeman*, 125 S.W.3d at 506–07. The record does not show that Koshgarian's trial counsel performed in a manner that fell below the standard of reasonableness under prevailing professional norms without more information. *See Miller*, 548 S.W.3d at 499. Because we have no affidavit or record to explain why trial counsel proceeded in the manner he did, we cannot find his performance ineffective. *See Menefield*, 363 S.W.3d at 593. We overrule Koshgarian's first and second issues.

## III. MOTION FOR NEW TRIAL

By his third issue, Koshgarian argues the trial court erred by not holding a hearing

on his motion for new trial.

## A.    Standard of Review and Applicable Law

A defendant has a right to move for a new trial. *Hamilton v. State*, 563 S.W.3d 442, 448 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd). A defendant does not, however, have an "absolute right to a hearing on his motion for new trial." *Hobbs v. State*, 298 S.W.3d 193, 199 (Tex. Crim. App. 2009). We review a trial court's ruling on a motion for new trial under an abuse-of-discretion standard. *Gonzalez v. State*, 616 S.W.3d 585, 594 (Tex. Crim. App. 2020). We will reverse only if the trial court's ruling falls outside the zone of reasonable disagreement. *Smith v. State*, 286 S.W.3d 333, 339 (Tex. Crim. App. 2009). The failure to hear the motion constitutes an abuse of discretion only if the motion and accompanying affidavits (1) raise matters which are not determinable from the record, and (2) establish reasonable grounds showing that the defendant could potentially be entitled to relief. *Id.* at 338–39.

The defendant must support the motion for new trial with one or more affidavits that set forth the factual basis for the relief sought. *Id.*; *Wallace v. State*, 106 S.W.3d 103, 108 (Tex. Crim. App. 2003). A defendant is not entitled to a hearing on his motion for new trial unless he establishes the existence of reasonable grounds showing that he could be entitled to relief. *Smith*, 286 S.W.3d at 339. Thus, as a prerequisite to a hearing when the grounds listed in a motion for new trial are based on matters not already in the record, the motion is required to be supported by an affidavit, either by the defendant or someone else, specifically setting out the factual basis for the claim. *Id.*; *Bahm v. State*, 219 S.W.3d

10

391, 395 (Tex. Crim. App. 2007). The affidavit need not establish a prima facie case, or even every component legally required to establish relief. *Smith*, 286 S.W.3d at 339. It is sufficient if a fair reading of the affidavit gives rise to reasonable grounds in support of the claim. *Id.* But affidavits that are conclusory in nature and unsupported by facts do not provide the requisite notice of the basis for the relief claimed; thus, no hearing is required. *Id.*

**B.    Discussion**

Koshgarian filed three motions for new trial, all of which were denied. The first was filed on November 7, 2019, prior to sentencing being pronounced and denied that same day. It contained bare assertions and no affidavits. The second motion for new trial was filed on December 2, 2019, again alleging bare assertions without any supporting affidavits. That motion was also denied on the same day. On December 5, 2019, Koshgarian filed a notice of appeal. Then on December 17, 2019, Koshgarian filed a "corrected" motion for new trial, which was more detailed and contained affidavits. He did not file for leave of court with the "corrected" motion. The "corrected" motion was denied on December 18, 2019.

Texas Rule of Appellate Procedure 21.4(b) states the permissible time for amending a motion for new trial:

> (b) To Amend. Within 30 days after the date when the trial court imposes or suspends sentence in open court but before the court overrules any preceding motion for new trial, a defendant may, without leave of court, file one or more amended motions for new trial.

TEX. R. APP. P. 21.4(b). While a trial court may rescind an order granting or denying a motion for new trial after the thirty-day deadline imposed by Rule 21.4(b), *Kirk v. State*, 454 S.W.3d 511, 515 (Tex. Crim. App. 2015), the trial court may not allow a motion for new trial to be amended after overruling a preceding motion. TEX. R. APP. P. 21.4(b); *Rubio v. State*, 596 S.W.3d 410, 419 (Tex. App.—Dallas 2020, pet. ref'd); *Starks v. State*, 995 S.W.2d 844, 846 (Tex. App.—Amarillo 1999, no pet.) ("The overruling of a preceding motion [for new trial] terminates the time during which amendments are allowed.").

The first motion for new trial was a one paragraph motion where Koshgarian stated he was "coerced into requesting a non-jury trial by his court appointed attorney." He requested a new trial before a jury, and although he included some alleged quoted statements in his motion, he did not attach an affidavit supporting his allegation. Therefore, Koshgarian was not entitled to a hearing on his motion because he did not support the motion, as required. *See Smith*, 286 S.W.3d at 339. Without an affidavit to support allegations not found within the record, he could not show he was entitled to relief. *Id.* The second motion for new trial filed after he was sentenced was identical to his first motion and also did not contain an affidavit supporting his allegation. *See id.* The trial court did not err by denying these motions without a hearing.

The third motion for new trial Koshgarian filed as a "corrected motion for new trial" did contain an affidavit supporting the allegations that Koshgarian did "not knowingly and voluntarily waive his right to a trial by jury." Neither the second nor third "corrected" motion contained a motion for leave attached to them. *See* TEX. R. APP. P. 21.4(b). However,

12

even if a motion for leave had been filed with the subsequent motions for new trial, Koshgarian was not entitled to having them heard before the trial court. Once the trial court ruled on his original motion for new trial, the time he could have made any amendments expired. TEX. R. APP. P. 21.4(b); *Rubio*, 596 S.W.3d at 419. Therefore, the trial court did not err by denying his motions for new trial without a hearing. We overrule Koshgarian's third issue.

## IV. CONCLUSION

We affirm the trial court's judgment.

GINA M. BENAVIDES
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
26th day of August, 2021.

13